## 40216. DEPARTMENT OF TRANSPORTATION v. SHIFLETT.

GREGORY, Justice.

This is an appeal from a judgment of Cook Superior Court declaring unconstitutional the Outdoor Advertising Control Act of 1971. Ga. L. 1971, p. 5 et seq. (Extraordinary Session); OCGA § 32-6-70 et seq. (Code Ann. § 95A-913 et seq.). We reverse.

The principal issue is whether the Act violates the right of freedom of expression by restricting outdoor advertising in areas adjacent to the rights-of-way of interstate and primary systems of highways in this state. Next, we must decide if there has been an unlawful retroactive application of the Act. Finally, we must determine if property rights have been taken without payment of just and adequate compensation contrary to the Federal and State Constitutions.

Charles Shiflett was the owner of four outdoor advertising signs, billboards, all of which advertised the Charles Motel located in Adel. The signs were adjacent to the right-of-way of I-75 Highway in rural Cook County. For the purposes of this appeal it is undisputed that the signs violated the terms of the Outdoor Advertising Control Act, supra. Basically, the Act prohibits the erection or maintenance of all outdoor advertising within 660 feet of the right-of-way and visible from the main travelled way of the road. A number of exceptions are carved out of the general prohibition: (1) official traffic signs; (2) on-sight signs; (3) signs located in either zoned or unzoned commercial or industrial areas which provide information in the specific interest of the travelling public.

Through the appropriate administrative procedure, OCGA § 32-6-95 (Code Ann. § 95A-930.1), the Department of Transportation obtained a final agency decision which held the signs to be in violation of the Act and ordered their removal. Shiflett appealed to Cook Superior Court, attacking the Act on constitutional grounds but not challenging the findings made during the administrative procedure. The trial court held the Act violated Shiflett's right of freedom of expression, relying on Metromedia, Inc. v. City of San Diego, 453 U. S. 490 (101 SC 2882, 69 LE2d 800) (1981). Further, the trial court held the Act was unlawfully applied retroactively because the signs were erected prior to the effective date of the Act, October 6, 1971. The court also held Shiflett possessed vested property rights in the signs which could not be taken without first paying just and adequate compensation.

1. A statute may violate one's right of freedom of speech or expression in either of two fundamental ways. First is a direct purpose in the statute to control the flow of ideas or information. Second is an indirect restriction on the free flow of ideas or information while pursuing other goals. The former is aimed at communicative impact of expression or speech, while the latter is aimed at non-communicative impact of expression or speech. Where a statute is in the first category, direct control of expression, it is presumed to violate the First Amendment. If in the second, only an indirect impact on speech while pursuing other goals, there is to be a balancing between the interest sought to be furthered on the one hand, and the right of free speech under the circumstances on the other. See, L. Tribe, *American Constitutional Law,* § 12-2, at 580, 1978.

Only recently has it been recognized that commercial speech is afforded protection under the First Amendment. Bigelow v. Virginia, 421 U. S. 809 (95 SC 2222, 44 LE2d 600) (1975). In cases following Bigelow, culminating in Central Hudson Gas v. Public Service Comm., 447 U. S. 557 (100 SC 2343, 65 LE2d 341) (1980), a four-part analysis was developed to be used in cases involving commercial speech. (1) There is no protection for commercial speech unless it concerns lawful activity and is not misleading. (2) Is the governmental interest which conflicts with free speech substantial? (3) Does the regulation directly advance the governmental interest? (4) Is the regulation more extensive than necessary to serve the interest? We have had an occasion to apply this four-part test. *H & H Operations v. City of Peachtree City,* 248 Ga. 500 (283 SE2d 867) (1981). We declared unconstitutional a city ordinance which permitted on-sight commercial advertising signs but prohibited the

posting of prices on those signs. We were unable to find a substantial governmental interest in prohibiting price advertising but permitting other advertising.

It was this same four-part analysis which was applied in Metromedia, Inc. v. City of San Diego, supra. That decision struck down a San Diego ordinance which virtually prohibited outdoor advertising of noncommercial expression while permitting commercial outdoor advertising under certain restrictions. Using the four-part analysis the four justice plurality found two substantial governmental interests, traffic safety and esthetics. (There was no claim of unlawful activity nor of misleading advertising.) The analysis further disclosed that the removal of the sign was perhaps the only remedy available, hence, not an overreaching remedy. It was part three of the analysis which presented the most serious question. However, the court, on a very slim record, let stand the lower court's statement that ". . . a legislative judgment that billboards are traffic hazards is not manifestly unreasonable and should not be set aside . . . ." The court went on to observe that esthetic interests are subjective and, therefore, must be carefully scrutinized for any improper underlying purpose. Nothing in the record indicated any purpose to control the communicative, as opposed to the non-communicative, aspects of expression. The ordinance met the four-part test. It failed to pass scrutiny for another reason. It was a greater ban on noncommercial speech than on commercial speech, and it undertook to choose between some categories of noncommercial speech which were permitted and others which were not. It fell within the first of the two fundamental ways a statute may infringe upon First Amendment rights: it directly controlled the flow of ideas or information.

We now turn to the Outdoor Advertising Control Act. We first note that the Act does not directly control expression, but does so indirectly while pursuing other goals. So it is our duty to apply the four-part analysis. No suggestion has been made that unlawful activity is involved nor that the advertising is misleading. We go to the second element. Is there a substantial governmental interest which the statute seeks to implement? The General Assembly stated its intention was to provide a statutory basis for regulation of outdoor advertising consistent with the public policy relating to areas adjacent to roads of the State Highway System which also form a part of the Interstate and primary systems of highways declared by the Congress in 23 U.S.C. 103. Ga. L. 1971, p. 6 (Extraordinary Session). Part of that public policy was to "promote the safety and recreational value of public travel, and to preserve natural beauty." 23 U. S. C. §

131. Thus, there are two substantial governmental interests, safety and recreational value of public travel and preservation of natural beauty. The legislative determination that billboards near highway rights-of-way diminish safety and recreational value of public travel is not manifestly unreasonable. That billboards detract from natural beauty is a subjective determination with regard to which we observe no underlying improper purpose, such as a desire to control expression or communication. We do not find the remedy of removal of the billboards to be more extensive than necessary to serve the interest involved. No other remedy is suggested, and none occurs to us which would be effective. The statute does not violate freedom of expression.

2. The trial court held that to apply the 1971 Act to the signs in this case was an unlawful retroactive application of the Act. This was based upon findings that the signs were erected in 1968 and 1970. We note that the 1971 Act replaced a similar Act approved April 6, 1967. Ga. L. 1967, p. 423 et seq. Shiflett's signs were erected in violation of restrictions in the 1967 Act similar to restrictions admittedly violated under the 1971 Act. See, Ga. L. 1967, p. 425. While the 1971 Act repealed the former Act, it provided, "[i]t shall be unlawful for any person . . . to maintain any sign not authorized by this Act and which is not lawfully in existence on the effective date of this Act. . . ." Ga. L. 1971, p. 20 (Extraordinary Session). There has been no unlawful retroactive application.

3. The trial court held Shiflett possessed property rights in the signs which could not be taken without the payment of just and adequate compensation under the Federal and State Constitutions. We have previously held to the contrary. *National Advertising Co. v. State Hwy. Dept.,* 230 Ga. 119, 122 (195 SE2d 895) (1973). We adhere to our previous holding that the Act is a proper exercise of the police powers. The Act provides for compensation for property rights in signs which were lawfully in existence on the effective date of the Act. Ga. L. 1971, pp. 17, 18, 19 (Extraordinary Session). Shiflett's signs were not lawfully in existence on that date.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

DECIDED JANUARY 4, 1984 —
REHEARING DENIED JANUARY 25, 1984.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General,* for appellant.
*John W. Rountree, Jr.,* for appellee.

*Schreeder, Wheeler & Flint, David H. Flint,* amicus curiae.