## S98A1218. STATE OF GEORGIA v. CAFE EROTICA, INC. et al.
(507 SE2d 732)

THOMPSON, Justice.

The State of Georgia appeals from a ruling of the trial court striking down as violative of the right to free speech under the Federal and Georgia Constitutions, a 1996 amendment to the Outdoor Advertising Control Act of 1971, OCGA § 32-6-70 et seq. In essence, the challenged legislation, codified as OCGA § 32-6-75 (b); Ga. L. 1996, p. 831, § 3, prohibits any off-premises outdoor advertising of commercial establishments where nudity is exhibited.

The stipulated facts show that appellee Cafe Erotica is a business establishment which provides food services and also offers adult entertainment, including erotic dance routines during which the dancers may become nude or partially nude. It is located adjacent to Interstate 75 in Peach County, Georgia. Appellee Sunshine Outdoors, Inc., is a Georgia corporation in the business of arranging agreements for outdoor advertising. For purposes of advertising its business, Cafe Erotica, through Sunshine Outdoors, contracted for the construction and maintenance of several outdoor billboards, which are located on property other than the site of Cafe Erotica. The parties acknowledge that, if enforced, OCGA § 32-6-75 (b) could subject Cafe Erotica and Sunshine Outdoors to criminal prosecution for erecting and maintaining off-site outdoor advertising.

Appellees brought an action to enjoin enforcement of OCGA § 32-6-75 (b), and for a declaration that the legislation unconstitutionally limits free speech in violation of the First Amendment to the Federal Constitution, and Art. I, Sec. I, Par. V of the Georgia Constitution. The trial court entered a temporary restraining order enjoining enforcement of the legislation for a period of 30 days to maintain the status quo. Plaintiffs moved for a permanent injunction, posing two alternative theories: (1) that the legislation is content-based and therefore must be subject to strict scrutiny, requiring the State to establish that the "regulation is necessary to serve a compelling State interest and that it is narrowly drawn to achieve that end," *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 45 (103 SC 948, 74 LE2d 794) (1983); or (2) that the statute impermissibly restricts commercial speech under *Central Hudson Gas &c. Corp. v. Public Svc. Comm.*, 447 U. S. 557 (100 SC 2343, 65 LE2d 341) (1980). The trial court determined that it need not address plaintiffs' content-based argument because OCGA § 32-6-75 (b) impermissibly infringed upon the right of free speech under the less-exacting test of *Central Hudson Gas*. Accordingly, the court permanently enjoined the statute's enforcement. Finding no reversible error, we affirm.

Outdoor advertising within areas in specified proximity to the state highway system is restricted by the provisions of OCGA § 32-6-

72. The addition of OCGA § 32-6-75 (b) in 1996 sets out further restrictions on those previous limitations. Subsection (b) (2) explains the legislative intent or governmental interest in enacting the legislation. It provides, in pertinent part, as follows:

> since an outdoor advertising device advertising a commercial establishment where nudity is exhibited which is located in a political subdivision different from where the commercial establishment is located may mislead the traveling public and cause a devaluation of the property in the area surrounding such outdoor advertising, and since outdoor advertising of a commercial establishment . . . may divert the attention of drivers and thus cause traffic hazards, it is the intent of the General Assembly to protect the welfare and safety of the residents of this state and the traveling public by regulating outdoor advertising of commercial establishments where nudity is exhibited.[1]

OCGA § 32-6-75 (b) (1) defines "nudity," as the term is used in the statute. The substantive restrictions are contained in OCGA § 32-6-75 (b) (3):

> (3) Any outdoor advertising of a commercial establishment where nudity is exhibited shall be limited to the property where such commercial establishment is located, and the size, type, and number of outdoor advertising devices on any such property may be further regulated by rules and regulations promulgated by the commissioner of transportation.

In *Central Hudson Gas*, supra, the Court recognized that the First Amendment "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. [Cit.] The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." Id., 447 U. S. at 563. The Court then developed a four-part analysis for determining the validity of governmental restrictions on commercial speech, as distinguished from more fully protected speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern law-

---

[1] The general declaration of policy of the regulation of outdoor advertising in areas adjacent to the state highway system is set forth at OCGA § 32-6-70.

ful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

Id., 447 U. S. at 566. Accord *Dept. of Transp. v. Shiflett*, 251 Ga. 873, 874 (1) (310 SE2d 509) (1984). Since OCGA § 32-6-75 (b) applies to commercial advertising, as opposed to ideological or expressive speech, the *Central Hudson Gas* test is applicable:

(a) The State acknowledges that the activity conducted at Cafe Erotica is lawful, and there is no claim that the desired advertising is misleading.

(b) The governmental purpose in enacting the legislation is stated at OCGA § 32-6-75 (b) (2) — advertising of nude entertainment establishments "may mislead the traveling public," cause "a devaluation of the [surrounding] property," and create "traffic hazards" by "divert[ing] the attention of drivers." As the State shows, and the trial court acknowledged, protection of the welfare and safety of citizens, as well as traffic regulation, qualify as substantial governmental interests. *Metromedia v. San Diego*, 453 U. S. 490, 507 (101 SC 2882, 69 LE2d 800) (1981).

(c) As for the third step in the *Central Hudson Gas* analysis — that the restriction must directly advance a substantial governmental interest — the trial court concluded that the State failed to meet its burden because it offered no specific evidence establishing that the restriction directly advances its stated objectives. The State apparently waived a hearing in the matter and relied solely on the stipulation of facts and trial briefs of the parties; neither studies nor anecdotal evidence was presented to establish the likely success of the regulation.

Citing *Metromedia*, supra, where there was little in the record connecting billboards and traffic safety, the State asserts that specific evidence of the efficacy of the ordinance was not required; instead, the courts may defer to the common sense of the legislature that billboards pose substantial hazards to traffic safety. We agree. Keeping in mind that the present restriction on commercial speech is accorded less protection than purely expressive activity, we adopt the reasoning of *Metromedia*, supra, 453 U. S. at 509: "We likewise hesitate to disagree with the accumulated, commonsense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety." (Citations in footnote omitted.) Accordingly, we conclude that the ban on off-site advertising will directly further the governmental interest in preventing

hazards to public safety.[2] Compare *Chambers v. Peach County*, 266 Ga. 318 (467 SE2d 519) (1996) (before passing an ordinance to combat undesirable secondary effects of adult entertainment, governing body must rely on evidence reasonably believed to be relevant to the problem); *State of Ga. v. Cafe Erotica*, 269 Ga. 486 (500 SE2d 574) (1998) (statute which attempted to restrict expressive conduct by increasing the age of admission to adult entertainment establishments failed to meet strict-scrutiny analysis).

(d) We now consider the final criterion of *Central Hudson Gas* — whether the complete suppression of off-site outdoor advertising of commercial establishments where nudity is exhibited is more extensive than necessary to achieve the State's asserted objectives. In this regard the State submits that OCGA § 32-6-75 (b) is narrowly tailored to achieve its purpose in that it does not seek to ban all outdoor advertising, and allows for other advertising media. We do not read the restriction in that manner. By restricting "[a]ny *outdoor advertising* of a commercial establishment where nudity is exhibited," OCGA § 32-6-75 (b) (3) has gone further than necessary in seeking to meet its ends. (Emphasis supplied.) It is not directed solely at provocative images, but it prohibits even a worded sign advertising the location of a business. Because we conclude that traffic safety could be served as well by a more limited restriction on commercial speech, we hold that the legislation is not narrowly tailored to achieve its stated goal.

As the Supreme Court observed in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U. S. 748, 765 (96 SC 1817, 48 LE2d 346) (1976):

> Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price. So long as we preserve a predominately free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end the free flow of commercial information is indispensable.

Because the absolute proscription against any form of off-site adver-

---

[2] While we note that the State provided no extrinsic evidence to establish that its other asserted interests, those of aesthetics and devaluation of surrounding property, were directly furthered by the legislation, it was determined in *Central Hudson Gas*, supra, 447 U. S. at 569 (C) that a direct link between one asserted interest was sufficient to satisfy the third prong, even though links to other state's interests were tenuous or speculative.

tising impedes the free flow of information and far exceeds the State's legitimate interest, OCGA § 32-6-75 (b) is an unconstitutional infringement on free speech as guaranteed by the First Amendment and the Georgia Bill of Rights.

Although the trial court did not deem it necessary to reach the final criterion of *Central Hudson Gas,* the court was correct in enjoining enforcement of OCGA § 32-6-75 (b). A judgment right for any reason will be affirmed. See generally *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership,* 265 Ga. 645 (458 SE2d 632) (1995).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 2, 1998.

*Thurbert E. Baker, Attorney General, W. Wright Banks, John B. Ballard, Jr., Assistant Attorneys General,* for appellant.
*Thomas E. Maddox, Jr.,* for appellees.