**PASSIONS VIDEO, INC., a Missouri Corporation and Gala Entertainment of K.C., Inc., a Missouri Corporation, Plaintiffs,**

v.

**Jay NIXON, Attorney General of the State of Missouri, in his official capacity, Defendant.**

No. 04–0760–CV–W–GAF.

United States District Court,
W.D. Missouri,
Western Division.

Feb. 18, 2005.

Richard T. Bryant, Richard T. Bryant & Associates, PC, Kansas City, MO, for Plaintiffs.

John P. Clubb, Attorney General's Office, Jefferson City, MO, for Defendant.

## AMENDED ORDER

FENNER, District Judge.

The parties appeared herein on February 8, 2005, and after being heard, plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction was taken under advisement. Plaintiffs' motion seeks to have defendant enjoined from enforcing Senate Bill 870 as enacted by the 92nd General Assembly of the State of Missouri and codified as Missouri Revised Statutes Sections 226.531 and 573.510. Upon full consideration, plaintiffs's Motion for Temporary Restraining Order and Preliminary Injunction are denied.

The statutory language at issue here provides as follows:

"226.531. 1. As used in this section the following terms, mean:

(1) "Adult cabaret", a nightclub, bar, restaurant, or similar establishment in which persons appear in a state of nudity, as defined in Section 573.500, RSMo, or semi-nudity, in the performance of their duties;

(2) "Semi-nudity", a state of dress in which opaque clothing fails to cover the genitals, anus, anal cleft or cleavage, pubic area, vulva, nipple and areola of the female breast below a horizontal line across the top of the areola at its highest point. Semi-nudity shall include the entire lower portion of the female breast, but shall not include any portion of the cleavage of the human female exhibited by wearing apparel provided the areola is not exposed in whole or part;

(3) "Sexually-oriented business", any business which offers its patrons goods of which a substantial portion are sexually-oriented materials. Any business where more than ten percent of display space is used for sexually-oriented materials shall be presumed to be a sexually-oriented business;

(4) "Sexually-oriented materials", any textual, or three dimensional material that depicts nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in a way which is patently offensive to the average person applying contemporary adult community standards with respect to what is suitable for minors.

2. No billboard or other exterior advertising sign, for an adult cabaret or sexually-oriented business shall be located within one mile of any state highway except if such business is located within one mile of a state highway then the business may display a maximum of two exterior signs on the premises of the business, consisting of one identification sign and one sign solely giving notice that the premises are off limits to minors. The identification sign shall be no more than forty square feet in size and shall include no more than the following information: name, street address, telephone number, and operating hours of the business.

3. Signs existing at the time of the effective date of this section, which did not conform to the requirements of this section, may be allowed to continue as a nonconforming use, but should be made

to conform within three years from August 28, 2004.

4. Any owner of such a business who violates the provisions of this section shall be guilty of a class C misdemeanor. Each week a violation of this section continues to exist shall constitute a separate offense.

5. This section is designated to protect the following public policy interests of this state, including but not limited to: to mitigate the adverse secondary effects of sexually oriented businesses, to improve traffic safety, to limit harm to minors, and to reduce prostitution, crime, juvenile delinquency, deterioration in property values, and lethargy in neighborhood improvement efforts."

The plaintiffs are adult oriented businesses impacted by the statutes in question. Plaintiff Passions Video, Inc., is a sexually-oriented business and plaintiff Gala Entertainment of KC, Inc., is an adult cabaret as defined by § 226.531, RSMo 2000. Plaintiffs operate businesses located within one mile of a state highway and maintain signs advertising their business within one mile of a state highway. Plaintiffs argue that the statutes in question impermissibly burden their First Amendment right to free speech.

■ A law that does not seek to ban the material within an adult business or the business altogether, but seeks to regulate the time, place and manner of an establishment doing business is content neutral and is permissible so long as there is a substantial governmental interest served by regulation focused on the adverse or negative effects secondary to adult businesses. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Young v. Amer-*

*ican Mini Theatres*, 427 U.S. 50, 71–73, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Such regulations must also be narrowly tailored to meet the governmental interest and leave open ample alternative channels for communication of the information. *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Furthermore, when speech is expression related solely to the economic interests of the speaker and its audience, it is considered commercial speech and the constitutional protection available turns on the nature of both the expression and of the governmental interests served by the regulation. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

■ Section 226.531.2, RSMo 2000 relates to commercial speech as it regulates only billboards or other exterior advertising for an adult cabaret or sexually-oriented business.[1] In *Central Hudson*, the U.S. Supreme Court established a four-part test to determine when a statute or regulation violates a right to free commercial speech. The test is as follows: (1) the court must determine if the First Amendment protects the speech in question; (2) if the First Amendment does afford the speech protection, the court must determine whether the state's governmental interest is substantial; (3) if the first two elements are established, the court then must determine whether the statute or regulation directly advances the government's claimed interest; and (4) the court must determine whether the statute or regulation is more extensive than necessary. *Id.* at 566, 100 S.Ct. 2343.

---

1. Plaintiffs argue that § 226.531, RSMo 2000 also prohibits them from engaging in signs reflecting political speech. However, the plain language of the statute reflects that it poses no prohibition on political speech as long as there is not a commercial component to that speech.

■ In order to be protected under the first prong of the *Central Hudson* test, plaintiffs' "speech" must concern lawful activity and it must not be misleading. *Georgia v. Cafe Erotica, Inc.*, 270 Ga. 97, 507 S.E.2d 732, 734 (1998). The parties do not dispute that plaintiffs have met this test.

■ Under the second prong of the *Central Hudson* test, the court must consider whether Missouri's governmental interest is substantial. As set forth in § 226.531.5, RSMo 2000, the stated purpose of this legislation is to address the adverse secondary effects of sexually-oriented businesses, to improve traffic safety, to limit harm to minors, and to reduce prostitution, crime, juvenile delinquency, deterioration in property values, and lethargy in neighborhood improvement efforts.

■ A governmental entity is entitled to rely on the experience of other jurisdictions in determining the needs to be addressed in relation to adult businesses. New studies and independent evidence are not needed so long as the evidence relied upon is reasonably believed to be relevant to the problem sought to be addressed. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In this regard, in drafting, proposing, and passing Senate Bill 870, State Senator Matt Bartle relied upon the experiences of other jurisdictions including New Jersey, Minnesota, California, and St. Louis, Missouri. The governmental interest and public policy issues set forth under § 226.531.5, RSMo 2000 are well established in case law of these jurisdictions. *See e.g., Hamilton Amusement Center v. Verniero*, 156 N.J. 254, 716 A.2d 1137 (1998), *cert. denied* 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999) (holding that there is a material consensus regarding the secondary effects of sexually oriented businesses which include that such businesses promote juvenile delinquency, contribute to an overall increase in crime, create an environment that leads to the general deterioration of neighborhoods, and lower property values); *Id.* at 1145; *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216 (8th Cir.1997) (holding that as a matter of settled law, regulations aimed at minimizing the secondary effects of sexually oriented businesses serve a significant and substantial governmental interest and finding that studies considered and information gathered by the City of Minneapolis support the City's regulation of signs of such businesses in its effort to minimize secondary adverse impact); *Id.* at 1218, 1221; *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (finding that the City of Log Angeles was entitled to rely on a study showing that a concentration of adult businesses are associated with higher rates of prostitution, robbery, assaults, and thefts in surrounding communities); *Id.* at 430, 122 S.Ct. 1728; *City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (acknowledging that signs pose distinct problems such as obstructing views and distracting motorists and government's interest in traffic safety and preventing visual clutter can justify regulation); *Id.* at 49, 114 S.Ct. 2038. The experience of these jurisdictions is sufficient to establish that Missouri's governmental interest is substantial in relation to the regulations of § 226.531, RSMo 2000.

■ Under the third prong of *Central Hudson*, in order to constitutionally regulate commercial speech, the legislated restriction must "directly and materially advance the asserted governmental interest." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001). In order to prevail in establishing that § 226.531, RSMo 2000 directly advances the state's interest, the state must

demonstrate that "the harms it recites are real and that its restrictions will in fact alleviate them to a material degree." *Id.; see also Greater New Orleans Broadcasting Assoc., Inc. v. United States,* 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999).

■ By relying on the experience of other jurisdictions, Missouri has sufficiently demonstrated that the harm it seeks to address is real. Furthermore, law makers are entitled to apply common sense to determine that control of billboards can be an enhancement to traffic safety. *Metromedia,* 453 U.S. at 509, 101 S.Ct. 2882. Subdued signs will be less of a distraction to drivers (particularly teenagers), and less of a nuisance for the curiosity of children. When traveling on a highway, motorists often do not have the choices of alternative routes to avoid exposure of them and their families to signs for adult businesses as might be available when motorists are traveling on city streets. *FCC v. Pacifica Foundation,* 438 U.S. 726, 749, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) ("government's interest in the 'well-being of its youth' . . . justified the regulation of otherwise protected expression."). If their exterior signage is diminished, sexually-oriented businesses will exert a less dehumanizing influence on children attending schools and persons attending functions in the vicinity or simply returning to their residences. Also, the subdued signage will likewise lessen the impairment of the character and quality of residential neighborhoods, and diminish the diminution of property values. *See State v. Miller,* 416 A.2d 821, 824–5 (N.J.1980). Missouri's interests as claimed are advanced by the enactment of § 261.531, RSMo 2000.

■ The fourth prong of *Central Hudson* requires that the regulation not be more extensive than necessary. Narrow tailoring requires the restriction to "affect only that category of [business]

shown to produce the unwanted secondary effects." *St. Louis County v. B.A.P., Inc.,* 18 S.W.3d 397, 406 (Mo.App. E.D.2000). A restriction is narrowly tailored "as long as the regulation promotes a substantial government interest, that absent the regulation, would be achieved less effectively, and the chosen means does not burden more speech than necessary to further that government interest." *Id.* at 414. In *B.A.P., Inc.,* an operator of an adult business brought a First Amendment challenge to location restrictions on adult-oriented businesses set forth in county zoning and licensing ordinances. *Id.* at 401. St. Louis County prevailed because its interests preserving its quality of life was achieved more effectively with the ordinances. *Id.* at 414–5.

■ The more deferential standard of review applicable to statutes whose predominant purpose is the amelioration of secondary effects of sexually-oriented businesses means that the "narrowly tailored" requirement is satisfied so long as the law "promotes a substantial government interest that would be achieved less effectively absent the law;" in other words, "the cloth need not be cut quite so close" as it must be under the strict standard of review normally allotted to First Amendment. *Mitchell v. Comm'n on Adult Entertainment Est.,* 10 F.3d 123, 137 (3d Cir.1993).

In *Georgia v. Cafe Erotica, Inc.,* 270 Ga. 97, 507 S.E.2d 732 (1998), the Georgia Supreme Court struck down as unconstitutional a Georgia statute that prohibited off-premises outdoor advertising of businesses where nudity is exhibited. The Georgia court struck down that law, in part, because it was not narrowly tailored enough to address the state's interest in improving traffic safety and upholding property values. *Id.* at 735. Georgia's statute prohibited "any outdoor advertising" including

worded signs that advertised the location of the business. *Id.*

■ Section 226.531, RSMo 2000 is narrowly tailored. It only restricts adult business billboard advertisements within one mile of a state highway and it allows those businesses located within one mile of a state highway to utilize outdoor signage for identification purposes. Additionally, other channels of advertisement or communication are not limited and there is no limitation of the materials within the businesses. There is no unconstitutional infringement of plaintiffs' First Amendment rights.

In addition to their First Amendment argument, plaintiffs argue that the amortization provisions of § 226.531, RSMo 2000 violate their equal protection rights and are an unconstitutional taking of property rights without compensation.

■ The record reflects that plaintiffs do not own any billboard structures and there are no leasehold interests that will be impacted given the three year amortization period of § 226.531, RSMo 2000. Even though plaintiffs may have on-premise signs that could be impacted, plaintiffs' continued use of their property for their existing business is not prohibited. Furthermore, there is no evidence before the court as to any asserted property interest for which the state has refused compensation. There is no evidence to support an unconstitutional taking without compensation.

■ Plaintiffs argues that § 226.531, RSMo 2000 violates their equal protection rights because it "singles out" owners of adult cabarets and sexually-oriented businesses by prohibiting them from having billboards or other exterior advertising within one mile of a state highway based on the content of their advertising. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Id.* at 440, 105 S.Ct. 3249 (citations omitted). When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude. *Id.* As discussed previously herein, a law that does not seek to ban the material within an adult business or the business altogether, but seeks to regulate the time, place, and manner of an establishment doing business is content neutral and is permissible so long as there is a substantial governmental interest served by the regulation focused on the adverse or negative effects secondary to adult businesses. *City of Renton v. Playtime Theatres,* 475 U.S. at 47, 106 S.Ct. 925. Section 226.531, RSMo 2000 is a content-neutral time, manner and place regulation aimed at ameliorating the adverse secondary effects of sexually-oriented businesses. As discussed herein, ameliorating these adverse secondary effects is a legitimate state interest. The fact that § 226.531, RSMo 2000 treats signs of adult cabarets and sexually-oriented businesses "differently" than other businesses does not violate plaintiffs' equal protection rights.

■ Plaintiffs also argue without any evidence or authority in support that because § 226.531.1(3), RSMo 2000 provides that "Any business where more than ten percent of display space is used for sexually-oriented materials shall be presumed to

be sexually-oriented business" that the statutory language is not narrowly tailored because it could be applied to a number of establishments such as drug stores and mainstream bookstores. Given that there is no evidence to support this argument, no indication of any intent to apply the law to anything other than an adult business and that plaintiffs admit that they are adult businesses to which the statutes apply, this argument is without merit. It is not necessary to speculate as to whether a challenged law might be applicable to others when it is clearly applicable to the parties at hand. *See Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 58–59, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

WHEREFORE, for the reasons stated herein, plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction are denied.