**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**



# SUPREME COURT OF GEORGIA
Case No. S24C0144

April 16, 2024

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

## VICTORY MEDIA GROUP, LLC v. GEORGIA DEPARTMENT OF TRANSPORTATION

The Supreme Court today denied the petition for certiorari in this case.

*All the Justices concur.*

Court of Appeals Case No. A24D0007

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

PETERSON, Presiding Justice, concurring.

Plaintiff Victory Media Group LLC argues that the state law regulating billboards violates their right to free speech. The trial court ruled for the State without meaningfully addressing Victory Media's free speech argument, and the Court of Appeals denied Victory Media's application for discretionary appeal. The State argues that our Court had resolved this claim in its favor 40 years ago. The State is wrong; our decision from 1984 could not and did not address Victory Media's central argument, which focuses on later developments in the United States Supreme Court's treatment of content-based speech restrictions. But this is not a proper case to consider those developments. Even if Victory Media's legal arguments are correct, they still lose; the parts of the law that may violate the First Amendment are not the parts of the law that harmed Victory Media. Accordingly, I concur in the denial of the petition for a writ of certiorari, but write to flag this important issue for future litigants and courts.

This case centers on Victory Media's attempt to obtain a

multiple message sign permit from the Department of Transportation. The Department approved Victory Media's application but later revoked the permit because another sign, which was already established pursuant to a permit, was located less than 5,000 feet from the requested location for Victory Media's multiple message sign. See OCGA § 32-6-75 (c) (1) (C) ("No . . . multiple message sign shall be placed within 5,000 feet of another multiple message sign on the same side of the highway[.]"). In appealing the Department's decision, Victory Media challenges among other things the constitutionality of the Outdoor Advertising Control Act ("the Act"), which governs the permit application process for outdoor advertising signs. Victory Media contends the Act is unconstitutional because it imposes content-based restrictions on speech.[1]

---

[1] For instance, Victory Media points to the Act's direction that "[n]o outdoor advertising shall be erected or maintained within 660 feet of the nearest edge of the right of way and visible from the main traveled way of the interstate or primary highways in this state, except the following: (1) [d]irectional and other official signs and notices; (2) [s]igns advertising the sale or lease of the property upon which they are located; (3) [s]igns advertising

In defense of the Act, the State relied below on our decision in *DOT v. Shiflett*, where this Court rejected a claim that the Act violated the right to free speech and held that it did "not violate the freedom of expression."[2] 251 Ga. 873, 876 (1) (310 SE2d 509) (1984). Because the case involved commercial speech and we concluded that the Act indirectly controlled expression, we applied the four-part analysis from *Central Hudson Gas v. Pub. Serv. Comm'n*, 447 U.S.

---

activities conducted or maintained within 100 feet of the nearest part of the activity . . . ; (4) [s]igns located in areas zoned commercial or industrial, which signs provide information in the specific interest of the traveling public; (5) [s]igns located in unzoned commercial or industrial areas, which signs provide information in the specific interest of the traveling public; and (6) [d]irectional signs, displays, and devices about goods and services in the specific interest of the traveling public[.]" See OCGA § 32-6-72. Appellant contends that the "Act *further* restricts permissible signs based on the type of message contained in the sign[,]" and in support Appellant points to the "spacing, location, and configuration requirements" and various exemptions in the Act.

[2] We did not specify whether the free speech claim was brought only under the U.S. Constitution or was also brought under a similar provision of the Georgia Constitution. Our analysis cited only federal caselaw decided under the First Amendment. Accordingly, I do not understand *Shiflett* to have decided anything about the Georgia Constitution's speech protections, and note further that there's ample reason to think those protections may be different from their federal equivalent. See, e.g., *Maxim Cabaret, Inc. v. City of Sandy Springs*, 304 Ga. 187, 196-197 (816 SE2d 31) (2018) (Peterson, J., concurring) (noting textual differences between federal and state provisions).

4

557 (100 SCt 2343, 65 LE2d 341) (1980).[3] See *Shiflett*, 251 Ga. at 874-875 (1).

But the State's reliance on *Shiflett* is misplaced. To begin, we did not consider there whether the Act contained content-based restrictions on speech, which United States Supreme Court precedent now makes clear is a critical consideration. See *Nat. Inst. of Fam. and Life Advocs. v. Becerra ("NIFLA")*, 585 U.S. 755, 766 (II) (A) (138 SCt 2361, 201 LE2d 835) (2018) ("When enforcing [the First Amendment's] prohibition [on laws that abridge the freedom of speech], precedents distinguish between content-based and content-neutral regulations of speech.").

"Content-based laws — those that target speech based on its communicative content — are presumptively unconstitutional and may be justified only if the government proves that they are

---

[3] That analysis considers whether (1) the commercial speech was misleading or concerned an unlawful activity, (2) the governmental interest was substantial, (3) the regulation directly advanced the government interest, and (4) the regulation was more extensive than necessary to serve that interest. See *Shiflett*, 251 Ga. at 874 (1); *H&H Operations, Inc. v. City of Peachtree City*, 248 Ga. 500, 502 (2) (283 SE2d 867) (1981) (striking down sign ordinance because we found "no substantial governmental interest in permitting commercial signs yet prohibiting the posting of prices").

narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (II) (A) (135 SCt 2218, 192 LE2d 236) (2015). Strict scrutiny applies "when a law is content based on its face or when the purpose and justification for the law are content based[.]" Id. at 166 (II) (C) (1) (striking down content-based regulations of speech in sign code that failed to survive strict scrutiny); see also *Alvarez*, 567 U.S. at 724 (IV) (content-based restriction on speech failed to satisfy the "most exacting scrutiny"). "This stringent standard reflects the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or *its content*." *NIFLA*, 585 U.S. at 766 (II) (A) (cleaned up; emphasis added).[4] "Laws that are *content neutral* are instead subject to lesser scrutiny." *Reed*, 576 U.S.

---

[4] In *City of Austin v. Reagan National Advertising of Austin, LLC*, the United States Supreme Court indicated that "restrictions on speech may require *some* evaluation of the speech and nonetheless remain content neutral" and held that a regulation's distinction between on-premise and off-premise signs was content neutral because it did not turn on the substantive message of the sign. 596 U.S. 61, 72-74 (II) (B) (142 SCt 1464, 212 LE2d 418) (2022). But the statute here purports to distinguish permissible off-premise signs from impermissible off-premise signs based in part on content, which creates different issues than the ordinance at issue in *City of Austin*.

at 172 (IV).

At the time that *Shiflett* was decided, it had "[o]nly recently . . . been recognized that commercial speech is afforded protection under the First Amendment." *Shiflett*, 251 Ga. at 874 (1). See *NIFLA*, 585 U.S. at 767 (II) (B) ("professional speech" is not exempt from the normal prohibition on content-based restrictions); see also *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (II) (A) (1) (131 SCt 2653, 180 LE2d 544) (2011) ("[c]ommercial speech is no exception" to the general rule that content-based restrictions of speech warrant heightened judicial scrutiny). To satisfy its burden to justify that a content-based restriction on commercial speech is consistent with the First Amendment, the State must show "at least that the [burden] directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell*, 564 U.S. at 571-572 (II) (B). This standard requires a proportional fit "between the legislature's ends and the means chosen to accomplish those ends." Id.

In the light of this precedent, this Court has since struck down

local sign ordinances that contained such content-based distinctions. See *Fulton County v. Galberaith*, 282 Ga. 314, 317-319 (3) (647 SE2d 24) (2007) (affirming trial court's ruling that sign ordinance that banned all signs, including commercial ones, but exempted signs from the ban on a case-by-case basis was the "the antithesis of the narrow tailoring that is required under the First Amendment, even in the context of commercial speech"); *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc.*, 266 Ga. 393, 394-398 (467 SE2d 875) (1996) (striking down sign ordinances because they imposed content-based restrictions on speech). But we have yet to address whether the Outdoor Advertising Control Act contains such content-based restrictions, and that important question remains open in our precedent. See *State v. Cafe Erotica, Inc.*, 270 Ga. 97, 97 (507 SE2d 732) (1998) (resolving challenge to the Act under *Central Hudson* test without reaching whether the "legislation [was] content-based and therefore . . . subject to strict scrutiny").

Victory Media points to provisions of the Act and regulations promulgated under the Act that may well be content-based. See, e.g.,

8

OCGA § 32-6-71 (defining among other things categories of signs referenced in the Act); OCGA § 32-6-72 (limiting outdoor advertising visible from the main traveled way of the state's interstate or primary highways to specific categories of signs); OCGA § 32-6-75 (a) (establishing additional conditions associated with certain categories of permissible signs); Ga. Comp. R. & Regs., r. 672-6-.03 (requiring a permit before the construction of certain categories of signs). But none of those provisions were actually enforced against Victory Media. Instead, Victory Media's permit was revoked because OCGA § 32-6-75 (c) (1) (C) directs that "[n]o multiple message sign . . . be placed within 5,000 feet of another multiple message sign on the same side of the highway[,]" and the Department had already approved the permit of another multiple message sign located less than 5,000 feet from the location that Victory Media requested.

Our caselaw requires a party challenging a state statute as unconstitutional to show that the unconstitutional provision harmed the party. See *Parker v. Leeuwenburg*, 300 Ga. 789, 790 (797 SE2d 908) (2017) ("As a prerequisite to attacking the

constitutionality of a statute, the complaining party must show that it is hurtful to the attacker."); *Black Voters Matter Fund, Inc. v. Kemp*, 313 Ga. 375, 393 (870 SE2d 430) (2022) (Peterson, J., concurring) ("One clear line of case law . . . holds that persons seeking to challenge a state statute as unconstitutional may do so only if that statute has injured them in some specific way.").[5] Victory Media has failed to make that showing, and so we cannot reach the open constitutional question they raise.

---

[5] Victory Media did not challenge the Act on overbreadth grounds. See *Bo Fancy Prods., Inc. v. Rabun County Bd. of Comm'rs*, 267 Ga. 341, 344-345 (2) (a) (478 SE2d 373) (1996) (adopting a "more relaxed standard of 'standing' applicable to a First Amendment challenge of an allegedly overbroad statute").