**SECOND DIVISION
MILLER, P. J.,
MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 26, 2024**

# In the Court of Appeals of Georgia

A24A0376. AMG, LLC v. GEORGIA DEPARTMENT OF TRANSPORTATION.

MILLER, Presiding Judge.

AMG, LLC, challenges a superior court order affirming the final agency decision of the Georgia Department of Transportation ("the DOT"), which denied AMG's application for a permit for a multiple message sign ("MMS").[1] We conclude that AMG's application was properly denied under OCGA § 32-6-75 (c) (1) (C) because AMG's proposed sign and another sign are on the same side of the highway

---

[1] An MMS is "a sign, display, or device which changes the message or copy on the sign electronically by movement or rotation of panels or slats." OCGA § 32-6-71 (11.1). An MMS is colloquially known as an electronic or digital billboard, as opposed to a traditional billboard.

and are within 5,000 feet of each other. Accordingly, we affirm the superior court's order.

> [J]udicial review of an administrative decision is a two-step process: because the court reviewing an administrative decision must accept the agency's findings of fact if there is any evidence to support the findings, the court must first determine if there is evidence to support the factual findings; the court then is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence. But importantly, both the superior court and this Court review conclusions of law de novo.

(Citations and punctuation omitted.) *Monumedia II, LLC v. Dept. of Transp.*, 343 Ga. App. 49, 51 (806 SE2d 215) (2017). "[W]hen this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation omitted.) *Eagle West, LLC v. Ga. Dept. of Transp.*, 312 Ga. App. 882, 885 (720 SE2d 317) (2011).

AMG submitted an application to the DOT seeking a permit to convert an existing traditional billboard to an MMS at a location in Brunswick, Georgia (1) just east of SR-25, (2) oriented so as to be visible to drivers on SR-25, (3) approximately

2

456 feet north of the intersection of SR-25 and SR-25 SE, also known as the Torras Causeway, and (4) on the north side of the Torras Causeway. The DOT denied AMG's application, concluding that OCGA § 32-6-75 (c) (1) — which provides that MMSs "shall be permitted on the interstate system, primary highways, and other highways" under certain conditions, including the condition that no MMS "shall be placed within 5,000 feet of another [MMS] on the same side of the highway" — bars AMG's proposed MMS because the DOT had issued an MMS permit to Georgia Outdoor Advertising II, LLC ("GOA"), and the GOA location is (1) on the same side of the Torras Causeway as AMG's proposed location, and (2) 714 feet from AMG's proposed location. The location for GOA's MMS is just north of the Torras Causeway, oriented so as to be visible to drivers on the Causeway, and approximately 700 feet east of the intersection of SR-25 and the Causeway.

AMG sought administrative review of the DOT's denial of its MMS application, and a hearing was held before an administrative law judge ("ALJ"). The ALJ issued an initial decision reversing the denial of AMG's application. The ALJ explained that regarding OCGA § 32-6-75 (c) (1) (C)'s prohibition on MMSs being placed within 5,000 feet of each other "on the same side of the highway," the relevant

highway for the AMG sign is SR-25, "the highway where the sign is located *and toward which it is oriented*," and the relevant highway for the GOA sign is the Torras Causeway, "the highway where the sign is located *and toward which it is oriented*." (Emphasis in original.) The ALJ also reasoned that the intent of the Outdoor Advertising Control Act, OCGA § 32-6-70 et seq., is to protect the public traveling along the highway from distractions, from aesthetic desecration, and from nuisances associated with the proliferation of signs in a concentrated area along the highway, and there would be no impact to the traveling motorist by permitting both AMG's and GOA's signs because the signs are not on the same highway and are not visible from each other.

Finally, the ALJ reasoned that application of the 660-foot requirement in OCGA § 32-6-72[2] to the 5,000-foot spacing rule in OCGA § 32-6-75 (c) (1) (C) would lead to the "logically inconsistent and absurd conclusion that the distance between

---

[2] OCGA § 32-6-72 (4) - (5) provides that "[n]o outdoor advertising shall be erected or maintained within 660 feet of the nearest edge of the right of way and visible from the main traveled way of the interstate or primary highways in this state, except" for "[s]igns located in areas zoned commercial or industrial, which signs provide information in the specific interest of the traveling public," and "[s]igns located in unzoned commercial or industrial areas, which signs provide information in the specific interest of the traveling public."

4

two MMS signs may or may not violate the 5,000-foot restriction, depending upon the sign from which the measurement is taken." Specifically, if the measurement is taken from the AMG sign location to the GOA sign location, the two signs are deemed to be within 5,000 feet because the AMG sign on SR-25 is within 660 feet of the intersection of SR-25 and the Torras Causeway, but if the measurement is taken from the GOA location to the AMG location, the two signs are not within 5,000 feet because the GOA location on the Causeway is more than 660 feet from the intersection and the DOT therefore cannot consider the location of any existing signs on SR-25.

After seeking agency review, the DOT issued a final decision reversing the ALJ's ruling. The DOT concluded that AMG's proposed MMS is prohibited by OCGA § 32-6-75 (c) (1) (C) because the proposed location is (1) on the same side of the Torras Causeway as the GOA MMS, and (2) within 5,000 feet of the GOA MMS. The DOT explained that because AMG's proposed location is within 660 feet of the right of way of both SR-25 and the Torras Causeway and is visible from both routes, the DOT's "regulatory control area" for AMG's sign includes both the eastern side of SR-25 and the northern side of the Causeway, so both routes are relevant in

evaluating AMG's application, and AMG's sign is considered to be located on both routes. The GOA sign is also within the DOT's regulatory control area on the northern side of the Torras Causeway because it is within 660 feet of the right of way of the Causeway and is visible from the Causeway.

However, the DOT explained that regardless of what route the signs are considered to be located on for purposes of OCGA § 32-6-72, that statute merely (1) provides that outdoor advertising is generally prohibited when the sign is within 660 feet of the nearest edge of the right of way and is visible from the main traveled way of the interstate or primary highways, and (2) allows certain signs that are within 660 feet of the nearest edge of the right of way and are visible from the main traveled way of the interstate or primary highways. Furthermore, as DOT Rule 672-6-.03 (1) (a) (1)[3] specifies, a sign requires a permit when it is within 660 feet of any controlled

---

[3] Under Rule 672-6-.03 (1) (a) (1), certain signs require a permit, including:

Signs within 660 feet of the nearest edge of the right of way of all controlled routes and visible from the main traveled way which are:

. . .

(ii) Outdoor Advertising signs in zoned commercial or industrial areas

route and is visible from the main traveled way. Thus, while OCGA § 32-6-72 may allow an MMS to be located within 660 feet of a controlled route, "the relevant language" here is the proscription in OCGA § 32-6-75 (c) (1) (C) that no MMS may be within 5,000 feet of another MMS "on the same side of the highway," and here the AMG sign and the GOA sign are both on the northern side of the Torras Causeway and are within 5,000 feet of each other.

AMG sought superior court review, and the superior court affirmed the DOT's final decision. This Court granted AMG's application for discretionary review, and this appeal followed.

---

which provide information in the specific interest of the traveling public; [or]

(iii) Outdoor Advertising signs in unzoned commercial or industrial areas which provide information in the specific interest to the traveling public.

Ga. Comp. R. & Regs. r. 672-6-.03 (1) (a) (1) (ii) - (iii).

1. First, AMG argues that the DOT erroneously ruled that its proposed MMS and GOA's MMS are "on the same side of the highway" under OCGA § 32-6-75 (c) (1) (C).[4] We disagree.

> [I]n considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. In summary, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.

(Citations and punctuation omitted.) *Monumedia II, LLC*, supra, 343 Ga. App. at 51-52 (1).

Again, OCGA § 32-6-75 (c) (1) (C) provides that no MMS "shall be placed within 5,000 feet of another [MMS] on the same side of the highway." Based on the plain and ordinary meaning of the phrase "on the same side of the highway," the spacing prohibition may apply when two signs are both on the north, south, east, or

---

[4] We have addressed AMG's arguments in a different order than it has presented them on appeal.

west side of a highway. Because the proposed AMG MMS and the GOA MMS are both on the north side of the Torras Causeway and are within 5,000 feet of each other, the spacing prohibition applies here. See *Turner Communications Corp. v. Ga. Dept. of Transp.*, 139 Ga. App. 436, 436-437 (2) (a) (228 SE2d 399) (1976) (statute which prohibited the co-existence of signs that were "located adjacent to an Interstate highway" and were "within 500 feet of another sign on the same side of the highway" applied to bar the co-existence of a sign located directly on I-20 and oriented for display to motorists on I-20 and a sign located directly on Peters Street and oriented for display to motorists on the Street; while the signs were not on the "same side" of Peters Street, they were on the "same side" of I-20 and within 500 feet of each other).

AMG asserts that its sign is "on" SR-25 because it is located directly on SR-25 and is oriented to drivers on SR-25, while GOA's sign is "on" the Torras Causeway because it is located directly on the Causeway and is oriented to drivers on the Causeway. However, there is nothing in the plain language of OCGA § 32-6-75 (c) (1) (C) to indicate that the spacing prohibition therein is contingent on an MMS's orientation or which highway the MMS is directly on. Instead, application of the spacing prohibition depends upon the distance between the signs and whether the

9

signs are on the same side of the highway. Thus, the DOT correctly ruled that AMG's proposed MMS and GOA's MMS are "on the same side of the highway" under OCGA § 32-6-75 (c) (1) (C).

2. Second, AMG argues that because its proposed MMS and the GOA MMS are not simultaneously visible, its sign would not create a distraction or visual clutter and is consistent with the intent of the Outdoor Advertising Control Act, and the GOA sign should not be considered for purposes of the spacing prohibition in OCGA § 32-6-75 (c) (1) (C). However, whether the signs are simultaneously visible or whether AMG's sign would create a distraction or visual clutter is irrelevant in light of the clear statutory prohibition on the co-existence of MMSs that are on the same side of the highway and are within 5,000 feet of each other.

Indeed, "[a]s long as the statutory language is clear and does not lead to an unreasonable or absurd result, it is the sole evidence of the ultimate legislative intent." (Citation and punctuation omitted.) *Lumpkin County v. Ga. Insurers Insolvency Pool*, 292 Ga. 76, 78 (2) (734 SE2d 880) (2012). "[R]egardless of whether [AMG's] construction of the statute would better achieve the General Assembly's aforementioned 'intent' . . . , we are charged with interpreting the law in accordance

with the . . . plain meaning of the text at issue[.]" (Citation and punctuation omitted.) *Monumedia II, LLC*, supra, 343 Ga. App. at 55 (1). "[B]oth our constitutional system of government and the law of this State prohibit the judicial branch from amending a statute by interpreting its language so as to change the otherwise plain and unambiguous provisions." (Citation and punctuation omitted.) Id. "Thus, [AMG's] argument that its interpretation of the statute more effectively achieves the statute's overall policy concerns should be directed toward the General Assembly, not this Court." Id.

Further, while certain spacing prohibitions in OCGA § 32-6-75 contain visibility exceptions, OCGA § 32-6-75 (c) (1) (C) contains no such exception. See, e.g., OCGA § 32-6-75 (a) (14) (generally prohibiting signs within 500 feet of a public park, public playground, public recreation area, public forest, scenic area, or cemetery, but allowing such a sign when it is "separated by buildings or other obstructions so that the sign located within the 500 foot zone is not visible from the public park, public playground, public recreation area, public forest, scenic area, or cemetery"); OCGA § 32-6-75 (a) (17) (generally prohibiting signs that are "located adjacent to an interstate highway" and are "within 500 feet of another sign on the same side of the

highway," but allowing such signs when they "are separated by buildings or other obstructions so that only one sign face located within the 500 foot zone is visible from the interstate highway at any time").

> Under the statutory interpretation doctrine of expressio unius est exclusio alterius, where the General Assembly includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the General Assembly acts intentionally and purposely in the disparate inclusion or exclusion.

(Citation and punctuation omitted.) *Truist Bank v. Stark*, 359 Ga. App. 116, 119 (1) (854 SE2d 784) (2021). If the General Assembly had desired to create a simultaneous-visibility exception for the spacing prohibition in OCGA § 32-6-75 (c) (1) (C), it could have done so as it did for other spacing prohibitions in the statute. See id. (if the General Assembly had desired to subject certain funds to an earnings limitation, it could have done so as it did with other types of funds mentioned in the statute at issue). Accordingly, whether the AMG and GOA signs are simultaneously visible or whether AMG's sign would create a distraction or visual clutter has no bearing on whether the spacing prohibition in OCGA § 32-6-75 (c) (1) (C) applies to bar AMG's sign.

3. Next, in two claims of error, AMG argues that the DOT erroneously interpreted the 660-foot rule in OCGA § 32-6-72 to apply to multiple rights of way simultaneously, that there can only be one nearest edge of the right of way, and that the nearest right of way for the AMG MMS is SR-25, not the Torras Causeway upon which the GOA MMS is located. AMG further argues that DOT Rule 672-6-.03 (1) (a) (1) is invalid to the extent it is used to support applying the 660-foot rule to multiple highways simultaneously. These arguments are unavailing for AMG.

Again, OCGA § 32-6-72 (4) - (5) provides that "[n]o outdoor advertising shall be erected or maintained within 660 feet of the nearest edge of the right of way and visible from the main traveled way of the interstate or primary highways in this state, except" for "[s]igns located in areas zoned commercial or industrial, which signs provide information in the specific interest of the traveling public," and "[s]igns located in unzoned commercial or industrial areas, which signs provide information in the specific interest of the traveling public."[5] Stated differently, OCGA § 32-6-72 "prohibits the erection or maintenance of all outdoor advertising within 660 feet of

---

[5] OCGA § 32-6-71 (23) defines "specific interest of the traveling public" to include "information regarding places offering lodging, food, motor vehicle fuels and lubricants, motor vehicle service and repair facilities, or any other service or product available to the general public."

the right-of-way and visible from the main travelled way of the road," but "[a] number of exceptions are carved out of the general prohibition," including signs located in either zoned or unzoned commercial or industrial areas which provide information in the specific interest of the travelling public. *Dept. of Transp. v. Shiflett*, 251 Ga. 873 (310 SE2d 509) (1984); see also OCGA § 32-6-70 (a) ("The General Assembly declares it to be the policy of this state that the erection or maintenance of outdoor advertising in areas adjacent to the rights of way of roads of the state highway system, which roads are also a part of the interstate and primary systems of highways within the state, shall be regulated in accordance with the terms of this part and the regulations promulgated by the commissioner pursuant thereto and that all outdoor advertising which does not conform to the requirements of this part is a public nuisance. . . .").

Here, AMG's and GOA's signs are *generally* allowed by OCGA § 32-6-72 as signs in either zoned or unzoned commercial or industrial areas that provide information in the specific interest of the traveling public. However, as the DOT appeared to recognize in its final decision, the critical issue is whether AMG's sign is *specifically* barred by the spacing prohibition in OCGA § 32-6-75 (c) (1) (C). Even

assuming AMG is correct that the relevant highway for its sign under OCGA § 32-6-72 is SR-25 and that the relevant highway for the GOA sign under OCGA § 32-6-72 is the Torras Causeway, the relevant highway for both signs under OCGA § 32-6-75 (c) (1) (C) remains the Causeway because both signs are on the north side of the Causeway and the signs are within 5,000 feet of each other, and therefore the specific spacing prohibition applies.

To the extent AMG is arguing that its MMS or GOA's MMS is not subject to any DOT regulation and permitting whatsoever under OCGA § 32-6-72 or other parts of the Outdoor Advertising Control Act, it is incorrect. Because both the AMG sign and the GOA sign are within 660 feet of the nearest edge of a right of way and are visible from the main traveled way of the interstate or primary highways, the signs are subject to DOT regulation and permitting under OCGA § 32-6-72 — regardless of which highway is considered for each sign. While OCGA § 32-2-2 generally provides the DOT with the authority to manage and maintain the state's highways, under OCGA § 32-6-90 the DOT specifically "is authorized to promulgate rules and regulations governing the issuance and revocation of permits for the erection and maintenance of outdoor advertising which is authorized by Code Sections 32-6-72 and

32-6-73 and which is not prohibited by this part." *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 291 (2) (a) (630 SE2d 878) (2006).

Accordingly, regardless of whether the DOT erroneously interpreted the 660-foot rule in OCGA § 32-6-72 to apply to multiple rights of way simultaneously, OCGA § 32-6-72 generally applies to both signs at issue, and the DOT properly ruled that AMG's proposed sign is barred by the specific spacing prohibition in OCGA § 32-6-75 (c) (1) (C).

4. AMG further argues that the DOT erroneously found that its sign is visible from "the main traveled way" of the Torras Causeway as that term is used in OCGA § 32-6-72. As discussed above in Division 3, however, even assuming that under OCGA § 32-6-72 the relevant highway for the AMG sign is SR-25 and not the Torras Causeway, the relevant highway for both the AMG sign and the GOA sign under OCGA § 32-6-75 (c) (1) (C) remains the Causeway because both signs are on the north side of the Causeway and the signs are within 5,000 feet of each other. Consequently, AMG is not entitled to reversal on this basis.

5. Finally, AMG argues that the "applicable statutes and [DOT] regulations" regulate signs based on content and violate the free speech protections of the United States and Georgia constitutions. This argument lacks merit for two reasons.

First, "because statutes are presumed to be constitutional until the contrary appears, the burden is on the party alleging a statute to be unconstitutional to prove it." (Citation omitted.) *Zarate-Martinez v. Echemendia*, 299 Ga. 301, 305 (2) (788 SE2d 405) (2016). AMG does not specify which statutes and regulations it is attacking, nor does it explain how any such statutes and regulations impermissibly regulate signs based on content. Thus, AMG has failed to carry is burden to prove that any such statutes and regulations are unconstitutional.

Second, even if the Outdoor Advertising Control Act and the regulations promulgated thereunder contain some content-based provisions, no content-based provisions were enforced against AMG here. Instead, AMG's MMS application was denied because OCGA § 32-6-75 (c) (1) (C) directs that no MMS "be placed within 5,000 feet of another [MMS] on the same side of the highway," and the DOT had already approved the permit of GOA's MMS located less than 5,000 feet from the location that AMG requested. "As a prerequisite to attacking the constitutionality of

17

a statute, the complaining party must show that it is hurtful to the attacker." *Parker v. Leeuwenburg*, 300 Ga. 789, 790 (797 SE2d 908) (2017); see also *Victory Media Group, LLC v. Ga. Dept. of Transp.*, Case No. S24C0144 (Ga. Sup. Ct. Apr. 16, 2024) (Peterson, J., concurring) (a party whose permit for an MMS was denied based on the spacing prohibition of OCGA § 32-6-75 (c) (1) (C) failed to show that it was harmed by any content-based provisions of the Outdoor Advertising Control Act and the regulations promulgated thereunder).

For the foregoing reasons, the superior court's order affirming the final decision of the DOT to deny AMG's MMS application is affirmed.

*Judgment affirmed. Markle and Land, JJ., concur.*