S09A0118. MANLOVE et al. v. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY.

(680 SE2d 405)

BENHAM, Justice.

Appellants challenge the constitutionality of appellee's noise ordinance which prohibits sounds that are "plainly audible" from a distance of 300 feet at any time, except that, after 11:00 p.m. on weeknights and after midnight on weekends, the distance is reduced to 100 feet. See Athens-Clarke County Ordinance § 3-5-24 (c) (1), (2). The ordinance also prohibits sounds from inside an apartment, townhome, or other similar dwelling that are plainly audible five feet from the boundaries of the dwelling. Athens-Clarke County Ordinance § 3-5-24 (c) (3). The maximum penalty for violating the ordinance is a $1,000 fine and six months incarceration. Athens-Clarke County Ordinance §§ 3-5-24 (e) and 1-1-5 (a).

Appellants are college students living in the county who allege that the appellee's noise ordinance causes them to censor the volume of their music. Appellants have never been cited, prosecuted, or fined for violation of the ordinance, although one of the appellants avers

that, on an unspecified date, a police officer who was investigating a noise complaint by appellant's neighbor, told appellant if the police officer returned and heard noise upon return, appellant could receive a citation. Appellants filed an action for declaratory judgment challenging the constitutionality of appellee's noise ordinance and appellee moved to dismiss. The trial court granted the motion to dismiss, determining that the appellants did not have standing because they failed to show that a particularized message was at stake for application of constitutional analysis and because appellants could not show harm. We affirm.

Pretermitting whether appellants were able to or required to show there was a particularized message warranting constitutional protection, appellants did not have standing because they failed to show any harm or injury resulting from appellee's noise ordinance. "As a general rule, a litigant has standing to challenge the constitutionality of a law only if the law has an adverse impact on that litigant's own rights." *Feminist Women's Health Center v. Burgess*, 282 Ga. 433 (651 SE2d 36) (2007). Whether proceeding under federal law or the law of this state, in order to challenge the constitutionality of an ordinance on First Amendment grounds, the party before the court must show an injury in fact. *Virginia v. American Booksellers Assn.*, 484 U. S. 383, 392 (108 SC 636, 98 LE2d 782) (1988) (to challenge the constitutionality of a statute the plaintiff must "establish at an irreducible minimum an injury in fact"); *Maverick Media Group v. Hillsborough County, Fla.*, 528 F3d 817, 822-823 (11th Cir. 2008); *Granite State Outdoor Advertising v. City of Roswell*, 283 Ga. 417 (1) (658 SE2d 587) (2008). Here, it is undisputed that appellants have never been subject to any fine or penalty as a result of violating appellee's noise ordinance, nor have they otherwise been harmed for running afoul of appellee's noise ordinance. Appellants repeatedly assert that they intend to play their music "loudly" in the future; however, even this assertion does not necessarily trigger a violation of the noise ordinance on its face or suggest an imminent threat of prosecution. See *Summers v. Earth Island Institute*, ___ U. S. ___ (129 SC 1142, 173 LE2d 1) (2009) (threat of injury in fact for standing purposes must "be actual and imminent, not conjectural or hypothetical"); *Elend v. Basham*, 471 F3d 1199, 1206-1208 (11th Cir. 2006) (although arrested for protesting in the past, plaintiffs' assertions that they would engage in protests in the future was insufficient to establish an imminent and concrete threat of injury for standing purposes). A court cannot judge the constitutionality of a law based on speculation and conjecture of such an unspecified future harm as is alleged in the case at bar. Id. Accordingly, the trial court did not err when it dismissed appellants' action for lack of

standing. *Granite State Outdoor Advertising*, 283 Ga. 417.[1]

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Melton, J., who dissent.*

SEARS, Chief Justice, dissenting.

The majority upholds the trial court's dismissal of the plaintiffs' complaint alleging that Athens-Clarke County's restrictive anti-noise ordinance violates their constitutional right to free speech. The majority hangs its hat on the plaintiffs' supposed lack of standing to sue, but that justification will not do; it contradicts decades of case law from this Court and the United States Supreme Court describing what plaintiffs must allege to establish standing to challenge criminal laws that restrict speech, even when they are cast as content-neutral "time, place, or manner" regulations. Not only is the majority wrong in this case, but the precedent it sets today bodes ill for the future for those who believe that the courts must remain ever vigilant against government attempts to control, and ultimately suppress, the right of the people to speak freely. I respectfully dissent.

1. The majority opinion's cursory review of the facts fails to capture the true breadth of the ordinance. It also fails to give due weight to the well pled allegations of the complaint, which must be taken as true on a motion to dismiss, as well as the undisputed affidavits submitted by the plaintiffs.

Athens-Clarke County Code § 3-5-24 criminalizes speech by individuals in the privacy of their own homes, as well as in public places.[2] Those unable to afford to live in detached, single-family houses are subject to especially stringent restrictions. The ordinance bars apartment-dwellers — 24 hours a day, seven days a week — from making or causing to be made "any noise in such a manner as to be plainly audible to any other person a distance of five feet" outside their unit.[3] The ordinance applies to both human-produced and mechanically produced sounds, and the term "plainly audible," as defined by the ordinance, means nothing more than that the sound can be heard by the human ear five feet beyond the walls, windows, doors, floor, or ceiling of the apartment. "Words and phrases need not be discernable," and "bass reverberations are included."[4]

---

[1] Because appellants' lawsuit was properly dismissed, we need not reach the issue of whether the trial court erred when it granted a protective order regarding the deposition of a witness as that issue is moot.

[2] Code § 3-5-24 (c).

[3] Code § 3-5-24 (c) (3).

[4] Code § 3-5-24 (b).

The penalty for a single violation is steep. It includes a criminal record, a term of imprisonment up to six months, and a fine of $1,000 per violation.[5] Speech, music, and other noises are subject to punishment even when they are fully consistent with the normal character of the area and no one is complaining. There is no requirement that the sounds actually disturb anyone or disrupt the peace of the community. Moreover, punishment is not conditioned on a prior warning by the police (or anyone else, for that matter) that an individual is violating the ordinance and needs to lower the volume of his or her speech. In fact, any officer who observes a violation is required to issue a citation. A substantial goal and purpose of the ordinance's enactment was suppression of personal expression by the area's large college-age population, and college students are specifically targeted for enforcement by the police. Naturally, the government exempted itself from the ordinance's restrictions.[6]

The plaintiffs are two college students living in Athens apartments. The area they live in "is a vibrant center of noise and activity, constantly pulsing and bustling with sound and activity day and night." It is home to "scores of bars, clubs, and restaurants," it "experiences the traffic of thousands of people" on a typical weekend night, Thursday nights, and, to a lesser degree, Tuesday nights, and "the sound and activity associated with a weekend night's activity . . . does not 'calm down' until approximately 3:30 or 4:00 a.m." It is a "gathering place and 'hang out' for students from the University of Georgia and nearby Gainesville State College," hosts numerous special events and festivals throughout the year, and "is often the site of political and social issue demonstrations, protests, rallies, marches, and other forms of expression on a wide array of issues of the day." In short, the character and normal activities of the area "are not quiet pursuits requiring a quiet environment."

The plaintiffs claim they are entitled "to engage in loud expression in areas where such expression would be consistent with the character of the area and would not disrupt the peace of the community." They do not do so, however, because they "fear prosecution under the Ordinance." Their fear is not based on idle speculation. The ordinance has been enforced against friends of theirs, and one plaintiff received an in-person visit from an Athens-Clarke County police officer who was there to issue him a citation based on a neighbor's complaint. The only reason a citation was not issued to the plaintiff at that time was because he saw the officer as he was arriving and immediately turned his radio off, despite the fact

---

[5] See Code §§ 1-1-5 (a), 3-5-24 (e).

[6] Code § 3-5-24 (c) (2) (a).

that it was consistent with the normal activities of the area. The officer threatened to come back later to check on him and promised to cite him if he heard music when he returned.

2. The trial court's order and the majority opinion suggest doubt about two bedrock principles of First Amendment law. First, like the trial court, the majority opinion fails to appreciate that music equals speech in the First Amendment context. The playing of music is not, as the trial court conceived it, "symbolic speech," such as silently burning a draft card or an American flag or flying an altered American flag upside down, that receives a lesser degree of First Amendment protection.[7] Music is inherently expressive, and it receives the full protection of the First Amendment, even if it has no lyrics.[8] The United States Supreme Court explained why in its landmark decision in *Ward v. Rock Against Racism*:

> Music is one of the oldest forms of human expression. From Plato's discourse in the Republic to the totalitarian state in our own times, rulers have known its capacity to appeal to the intellect and to the emotions, and have censored musical compositions to serve the needs of the state. See 2 Dialogues of Plato, Republic, bk. 3, pp. 231, 245-248 (B. Jowett transl., 4th ed. 1953) ("Our poets must sing in another and a nobler strain"); Musical Freedom and Why Dictators Fear It, N.Y. Times, Aug. 23, 1981, section 2, p. 1, col. 5; Soviet Schizophrenia toward Stravinsky, N.Y. Times, June 26, 1982, section 1, p. 25, col. 2; Symphonic Voice from China Is Heard Again, N.Y. Times, Oct. 11, 1987, section 2, p. 27, col. 1. The Constitution prohibits any like attempts in our own legal order. Music, as a form of expression and communication, is protected under the First Amendment.[9]

Thus, in *Ward*, the Court held that "time, place, or manner" restrictions applied to a rock concert must satisfy the same First Amendment standards that would govern restrictions applied to

---

[7] *Texas v. Johnson*, 491 U. S. 397 (109 SC 2533, 105 LE2d 342) (1989) (burning American flag); *Spence v. Washington*, 418 U. S. 405 (94 SC 2727, 41 LE2d 842) (1974) (flying altered American flag upside down); *United States v. O'Brien*, 391 U. S. 367 (88 SC 1673, 20 LE2d 672) (1968) (burning draft card).

[8] See *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U. S. 557, 569 (115 SC 2338, 132 LE2d 487) (1995) (remarking that music of famous composer Arnold Schöenberg is "unquestionably shielded" by First Amendment).

[9] *Ward v. Rock Against Racism*, 491 U. S. 781, 790 (109 SC 2746, 105 LE2d 661) (1989). See *Schad v. Mount Ephraim*, 452 U. S. 61, 65 (101 SC 2176, 68 LE2d 671) (1981) ("Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee.").

speeches in the same venue.[10] To the extent the majority opinion rests on the idea that the plaintiffs' claims are less worthy of protection because they involve mainly the playing of music rather than the spoken word, it is thoroughly contradicted by well established First Amendment doctrine.

Second, while the majority opinion disclaims any reliance on the trial court's reasoning, it suggests it is an open question whether speech or music must have a "particularized message" to receive protection under the First Amendment. The trial court's reliance on this proposition was explicit. It found that "[p]laintiffs' pleadings . . . utterly fail to describe any concept or ideas which they intend to communicate by playing music or shouting loudly" and noted that at the hearing on the motion to dismiss, plaintiffs' counsel "could not describe what *particularized message* was sought to be conveyed." (Emphasis supplied.) The Supreme Court has unanimously and unequivocally rejected the idea that a "particularized message" that can be explained to the satisfaction of a trial judge is a prerequisite for First Amendment protection.[11] Contrary to the majority opinion's implication, this is not an open question, and to the extent the majority's reasoning rests on this premise, it is invalid.

3. Background principles aside, the most serious failing of the majority opinion is its failure to address in any serious way the central issue in this appeal. The dispositive question is not, as the majority would have it, whether a plaintiff must plead and ultimately prove "injury in fact" to have standing to challenge a law in state court. That requirement is a given, even in the First Amendment context.[12] Rather, the central issue is whether what the plaintiffs have pled and proved with undisputed evidence constitutes "injury in fact" in the context of a challenge to a law that criminalizes arguably protected speech. The test for establishing "injury in fact" under these circumstances, which the majority opinion fails to even state, is as well established as it is clearly satisfied here.

It has long been the law that self-censorship of arguably protected speech based on an objectively reasonable fear of enforcement of a criminal law is an "injury in fact" sufficient to confer standing.

---

[10] *Ward*, 491 U. S. at 790-791.

[11] See *Hurley*, 515 U. S. at 569 ("[A] narrow, succinctly articulable message is not a condition of constitutional protection.").

[12] See *Virginia v. American Booksellers Assn.*, 484 U. S. 383, 392 (108 SC 636, 98 LE2d 782) (1988) ("To bring a cause of action . . . requires that plaintiffs establish at an irreducible minimum an injury in fact; that is, there must be some threatened or actual injury resulting from the putatively illegal action.") (citation and punctuation omitted); *Warth v. Seldin*, 422 U. S. 490, 499 (95 SC 2197, 45 LE2d 343) (1975) (holding that jurisdiction can be invoked "only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action") (citation and punctuation omitted).

Indeed, it is well established, even outside the First Amendment context, that a plaintiff need not risk actual arrest or prosecution to bring a court challenge to a law that criminalizes conduct that may be subject to constitutional protection. In *Babbitt v. United Farm Workers Nat. Union*, the United States Supreme Court canvassed the prior case law and concluded as follows:

> When contesting the constitutionality of a criminal statute, "it is not necessary that (the plaintiff) first expose himself to actual arrest or prosecution to be entitled to challenge (the) statute that he claims deters the exercise of his constitutional rights." When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."[13]

Refraining from *conduct* one might have a constitutional right to engage in because it is a crime can support standing to challenge a law even when First Amendment values are not at stake. Given the foundational role of freedom of expression in our constitutional scheme, it is little wonder that the Court has applied this principle vigorously where the "conduct" one wishes to engage in is pure speech and the basis for constitutional protection is the First Amendment. Thus, in *Virginia v. American Booksellers Assn.*, the Court wasted little ink explaining why self-censorship prompted by a law criminalizing expression constituted an "injury in fact" sufficient to confer standing on the plaintiffs. There, the plaintiff booksellers and their trade association filed a lawsuit challenging a Virginia law that would make it a misdemeanor to knowingly display non-obscene media "harmful to juveniles" in a manner that juveniles could examine or peruse them. Virginia argued the plaintiffs lacked standing to sue because the law had not yet gone into effect, and they therefore had yet to suffer any "injury in fact." The Court rejected that argument in summary fashion:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted

---

[13] *Babbitt v. United Farm Workers Nat. Union*, 442 U. S. 289, 298 (99 SC 2301, 60 LE2d 895) (1979) (quoting *Doe v. Bolton*, 410 U. S. 179, 188 (93 SC 739, 35 LE2d 201) (1973), and *Steffel v. Thompson*, 415 U. S. 452, 459 (94 SC 1209, 39 LE2d 505) (1974), and citing *Epperson v. Arkansas*, 393 U. S. 97 (89 SC 266, 21 LE2d 228) (1968), and *Evers v. Dwyer*, 358 U. S. 202, 204 (79 SC 178, 3 LE2d 222) (1958)).

law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.[14]

This aspect of standing doctrine as it applies in the First Amendment context is so broadly accepted and so deeply established that it is truly beyond cavil, and until today, this Court has had no trouble applying it.[15] For example, we said in *Bo Fancy Productions v. Rabun County Board of Commissioners* that "the Supreme Court of the United States has recognized that a more relaxed standard of 'standing' applies where, as here, the constitutionality of a statute is attacked on First Amendment grounds," and went on to hold that the plaintiffs would have lacked standing to challenge the law only if they took "no affirmative action whatsoever to seek to comply with [it] *or* to run afoul of its restrictions."[16] As then-Judge Carley succinctly put it when he was on the Court of Appeals, a plaintiff "is not required to violate a law about which there is an actual controversy concerning its enforceability and suffer a criminal prosecution, in order to test its validity."[17]

The majority opinion cites the Eleventh Circuit's decision in *Elend v. Basham* to support its holding.[18] This citation is puzzling, to say the least, because in *Elend*, the plaintiffs did not claim standing based on self-censorship prompted by an objectively reasonable fear of enforcement of a law criminalizing arguably protected speech. The closest the *Elend* court came to saying anything relevant to the present appeal was the following passage:

We have recognized before that "(t)he injury requirement is most loosely applied — particularly in terms of how directly the injury must result from the challenged governmental action — where first amendment rights are involved,

---

[14] *Virginia v. American Booksellers Assn.*, 484 U. S. at 393.

[15] See Tr. of Oral Arg. in *Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, O.T. 2008, No. 08-322, argued Apr. 29, 2009, p. 12 ("Is it any different from . . . a Federal law prohibiting certain speech? Do you have to subject yourself to . . . the penalty for that speech before you can attack the law? I don't think so.") (Scalia, J.).

[16] *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 344 (478 SE2d 373) (1996) (citation and punctuation omitted). See also *Jenkins v. Manry*, 216 Ga. 538, 540 (118 SE2d 91) (1961) ("Should [a plaintiff] be forced to violate the law which he thinks unconstitutional, and suffer a criminal prosecution, in order to test the validity of the law?").

[17] *Total Vending Svc. v. Gwinnett County*, 153 Ga. App. 109, 111 (264 SE2d 574) (1980).

[18] *Elend v. Basham*, 471 F3d 1199 (11th Cir. 2006).

because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced."[19]

Of course, this passage supports my position, and not that of the majority opinion.

Plaintiffs have easily satisfied the requirement to plead an "injury in fact" caused by the Athens-Clarke County ordinance. Both plaintiffs live in apartments in Athens populated mainly by college students. The ordinance makes it a crime punishable by six months in prison and a $1,000 fine for the plaintiffs to make any sound, even once, that can be heard five feet from the doors, windows, walls, floor, or ceiling of their apartments. The restriction applies throughout all hours of the day and night. Each plaintiff claims he has already "self-regulated the volume of his Constitutionally protected personal speech . . . in his home . . . in order to comply with the Noise Ordinance," and both claim they "desire[ ] to engage in Constitutionally-protected expression to a greater extent than the Ordinance permits," particularly with respect to the playing of music. There is nothing inherently suspect about two college students claiming that, on occasion, they genuinely want to play their music or talk with friends loud enough to be heard more than five feet from their apartments. Thus, the complaint sufficiently alleges both past and future self-censorship based on fear of prosecution under the ordinance.

The plaintiffs have also submitted sworn affidavits detailing their past self-censorship and explaining why they fear enforcement. The plaintiffs know what the ordinance says, know that it was passed to suppress the speech of college students like themselves, and know that law enforcement has a policy of citing violators with no prior warning, even in the absence of a complaint, and is targeting college students for enforcement. Furthermore, the plaintiffs have friends who have been issued citations for engaging in the same type of speech they wish to engage in, and one plaintiff was personally threatened with enforcement by an Athens-Clarke County police officer. Like Virginia in the *American Booksellers* case, Athens-Clarke County has given no indication that it intends to ease up on enforcing the ordinance against college students like the plaintiffs. No doubt the Court's opinion will be perceived as giving Athens-Clarke County officials the green light to continue and step up their enforcement efforts against the college-age population of Athens without fear of interference from the courts.

---

[19] *Elend*, 471 F3d at 1210 (citation omitted).

* * *

If coming forward with allegations and undisputed evidence of friends being prosecuted for the same conduct and an in-person threat from a police officer are insufficient to establish a reasonable fear of future prosecution under a law that criminalizes arguably protected speech, it is hard to imagine what, short of an actual arrest, the majority opinion would find sufficient. That is not the law. Accordingly, I respectfully dissent.[20]

I am authorized to state that Presiding Justice Hunstein and Justice Melton join in this dissent.

DECIDED JUNE 15, 2009 —
RECONSIDERATION DENIED JUNE 30, 2009.

*Charles A. Jones, Jr.*, for appellants.
*William C. Berryman, Jr., Amy S. Gellins*, for appellee.

---

[20] On June 30, 2009, I will retire from the Supreme Court of Georgia. So this will be one of my final opinions. I decided that my final opinion should be a dissent because, well, it seemed appropriate given my long history of dissenting on this Court, at least when I first came here in 1992.

There are only a few times in any person's life when someone walks into your life and you realize that you have been touched by a miracle. I have been lucky. Not to mention my staff, I have been touched by at least 11 such miracles in the 17 years I have served on this Court. These miracles are the justices with whom I served during my tenure.

Take Harold Clarke, for example. He was the type of man everyone could count on for his integrity and grace. Charles Weltner astonished me with his scholarship, as well as his bravery. Willis Hunt, an interesting and charming man of great intellect, made me laugh, while Richard Bell had a wonderfully unique way of looking at life and the mysteries around us. I admired Robert Benham's work ethic, his smarts, and his wisdom, as well as his commitment to racial and ethnic equality. I had high regard for Norman Fletcher's passionate commitment to indigent defense, as well as his devotion to "birding" and God.

The only woman I ever had the pleasure of serving with, Carol Hunstein, is a courageous survivor. She has, as they say, "true grit," and her heart is made of gold. George Carley touched me many times with his devotion to the law, to the Court, and to me. He is a kind man (he even had a pet rabbit once) and a good friend to all. Hugh Thompson is the Court's great storyteller and wordsmith, and he also has a keen reverence for other people's feelings that I have always esteemed highly. Harris Hines was a miracle disguised as a hard worker who excited my spirit with his purity, gentleness, and goodness. Lastly, Harold Melton has impressed me with his civility, urbanity, wit, and deep devotion to his wife, his children, and his church.

Over the many years we have become a family. You have been splendid colleagues, and the State of Georgia should be grateful for your integrity and lasting contributions to the law. We seem so often to understand each other even without spoken words. I will miss you all, and I love, honor, and respect you all. There will never be a day that goes by for the rest of my life that one or all of you and the Supreme Court of Georgia will be far from my thoughts.