300 Ga. 789
FINAL COPY

S16A1505.  PARKER et al. v. LEEUWENBURG et al.

HUNSTEIN, Justice.

This case presents a facial challenge to OCGA § 17-6-90, Georgia's good behavior bond statute, which permits "[a]ny judicial officer authorized to hold a court of inquiry" to conduct a hearing and, where sufficient cause is shown, require a party to secure a good behavior bond "to ensure the safety of persons or property in the county or the preservation of the peace of the county." OCGA § 17-6-90 (a).  As addressed below, however, we do not reach the constitutional question posed in this case because the complaining party lacks standing to pursue such a challenge.  Accordingly, we vacate the judgment of the trial court and remand this matter with direction that the court dismiss the complaint for relief.

The facts and procedural history of this case are not in question.  Ken and Rochel Parker ("Appellants") and Andrew and Penny Leeuwenburg ("Appellees") are neighbors with a contentious relationship.  Appellees first sought to have Appellants secure a good behavior bond in 2011, but the parties

reached an agreement without the issuance of the bond. Appellees again sought a good behavior bond in 2013; the parties agreed to a six-month bond, which was later extended for an additional six months, and that bond expired in December 2014.

Appellees sought a second bond in January 2015, alleging that Appellants had installed security cameras aimed at Appellees' property, conversed with and "objected to the activities of a tree service hired by [Appellees]," and used flashlights in a manner that disrupted the sleep of Appellees. Following a hearing at which both parties were represented by counsel, a magistrate court issued a bond enjoining both parties from having direct or indirect contact with the other; entering the other's property; and, surveilling, following, contacting, recording, or positioning any security cameras capturing the other's property. Appellants sought review of the bond by way of a petition for certiorari in the superior court. Later, however, Appellees agreed to dismiss the bond, and Appellants agreed to dismiss their appeal; a consent order memorializing the parties' agreement was filed in June 2016. In that same month, Appellants filed a complaint in the superior court seeking, among other things, a declaration that OCGA § 17-6-90 is unconstitutional. The trial court concluded that the statute

is constitutional and granted summary judgment to Appellees. On appeal, Appellants continue to assert that OCGA § 17-6-90 is unconstitutional. In response, Appellees argue that Appellants lack standing to bring their challenge. We agree.

Though the trial court did not address the question of standing, it is a jurisdictional issue, see Blackmon v. Tenet Healthsystem Spalding, Inc., 284 Ga. 369, 371 (667 SE2d 348) (2008), which this Court has a duty to address, see Williams v. State, 217 Ga. 312, 313 (122 SE2d 229) (1961). See also Perdue v. Lake, 282 Ga. 348, 348 (1) (647 SE2d 6) (2007) (question of standing a prerequisite to evaluating merits of challenge to trial court's order declaring statute unconstitutional). "As a general rule, a litigant has standing to challenge the constitutionality of a law only if the law has an adverse impact on that litigant's own rights." (Citations omitted.) Feminist Women's Health Center v. Burgess, 282 Ga. 433, 434 (1) (651 SE2d 36) (2007). As a prerequisite to attacking the constitutionality of a statute, the complaining party must show that it is hurtful to the attacker.[1] Agan v. State, 272 Ga. 540, 542 (1) (533 SE2d 60)

---

[1] To the extent that Appellants contend that the statute runs afoul of the First Amendment, they must show an injury in fact. See Manlove v. Unified Govt. of Athens-Clarke County, 285 Ga. 637, 638 (680 SE2d 405) (2009).

(2000). "'[S]tanding must be determined at the time at which the plaintiff's complaint is filed' in order to place an actual case or controversy within the purview of the court."[2] (Citations omitted.) Perdue, 282 Ga. at 348 (1). The issues before this Court are purely legal and, thus, are reviewed de novo. See Fulton County Bd. of Ed. v. Thomas, 299 Ga. 59, 61 (786 SE2d 628) (2016).

There are two provisions of the bond statute that are relevant here. Subsection (a) states as follows:

> Any judicial officer authorized to hold a court of inquiry may, upon the application of others under oath or upon his or her own motion, issue a notice to appear for a show cause hearing to any person whose conduct in the county is sufficient to justify the belief that the safety of any one or more persons in the county or the peace or property of the same is in danger of being injured or disturbed

---

[2] "The State Declaratory Judgment Act gives superior courts the power to declare rights and other legal relations of any interested party in 'cases of actual controversy' under OCGA § 9-4-2 (a) and 'in any civil case in which it appears to the court that the ends of justice require that the declaration should be made.' OCGA § 9-4-2 (b)." Leitch v. Fleming, 291 Ga. 669, 670 (1) (732 SE2d 401) (2012). However, a "'[d]eclaratory judgment will not be rendered based on a possible or probable future contingency,'" because "a court 'has no province to determine whether or not a statute, in the abstract, is valid, or to give advisory opinions.'" (Citations omitted.) Baker v. City of Marietta, 271 Ga. 210, 215 (1) (518 SE2d 879) (1999). Courts "will not decide the constitutionality of a law where no justiciable case or controversy is presented." St. John's Melkite Catholic Church v. Commr. of Revenue, 240 Ga. 733, 734 (1) (242 SE2d 108) (1978). Because we decide this case on standing, we do not address whether Appellants' claim presents a justiciable case or controversy that is otherwise sufficient to invoke the jurisdiction of the trial court.

thereby. Such show cause hearing shall be held within seven days of such application or motion. Upon sufficient cause being shown, the court may require from the person a bond with sureties for such person's good behavior with reasonable conditions to ensure the safety of persons or property in the county or the preservation of the peace of the county for a period of up to six months.

OCGA § 17-6-90 (a). Subsection (d), which references possible arrest, provides as follows:

At the time of or at any time after the filing of an application as provided in subsection (a) of this Code section, the judicial officer may, in his or her sound discretion, issue an order of arrest for the person or persons named in the application if the sworn allegations regarding the conduct of such person or persons is sufficient to justify the belief that there is imminent danger of injury to any person in the county, damage to any property in the county, or disturbance of the peace of the county. Upon the arrest of such person, a hearing as provided in subsection (a) of this Code section shall be held within 24 hours; otherwise, such person shall be released on bond with sureties and reasonable conditions for his or her good behavior until a hearing can be held.

Id. at (d). It is undisputed that Appellants have neither been arrested nor have they been threatened with arrest in relation to the bond proceedings associated with this matter; accordingly, Appellants plainly lack standing to challenge subsection (d) of OCGA § 17-6-90. See, e.g., Manlove, 285 Ga. at 638 (no standing to challenge constitutionality of noise ordinance absent a showing of "imminent threat of prosecution"); Frances Wood Wilson Foundation, Inc. v.

5

Bell, 223 Ga. 588 (157 SE2d 287) (1967) (no standing to challenge constitutionality of local law where there had been no prosecution or threat of prosecution).

Whether Appellants have standing to challenge subsection (a) is a closer question. The plain language of that subsection controls two things: (1) the timing and circumstances under which a *judicial officer* may issue "a notice to appear for a show cause hearing," and (2) what action that *judicial officer* may take following the show cause hearing, including what conditions may be placed on a peace bond. Subsection (a) does not proscribe or regulate conduct, but instead, it vests a *judicial officer* with the discretion to initiate a peace bond proceeding, either on its own or following an application, and with the discretion to compel a party to secure such a bond. See OCGA § 17-6-90 (a) (judicial officer *may* issue notice for a show cause hearing and *may* require a peace bond). Simply put, the only power that rests with Appellees is to apply for a peace bond with a judicial officer; any further action requires the exercise of judicial discretion.

Though Appellants contend that they have standing arising from Appellees' threat of future peace bond litigation, Appellants' complaint for

6

relief hinges on the idea that Appellees might seek a peace bond in the future and, also, that a judicial officer might exercise its discretion and conduct proceedings consistent with OCGA § 17-6-90 (a). Appellees cannot initiate or secure a peace bond in the absence of judicial intervention and, even if this Court were to accept that Appellees may initiate future peace bond proceedings, Appellants' complaint lacks any allegation that a judicial officer in Hall County would exercise its authority and initiate such proceedings. The mere fact that such proceedings have been initiated before is not, without more, sufficient to imbue Appellants with standing. Cf. Elend v. Basham, 471 F3d 1199, 1206-1208 (II) (A) (11th Cir. 2006) (although arrested for protesting in the past, plaintiffs' assertions that they would engage in protests in the future was insufficient to establish an imminent and concrete threat of injury for standing purposes). In effect, Appellants currently stand in the same position as other Hall County citizens who might, at some time in the future, be subject to the judicial procedure envisioned in OCGA § 17-6-90 (a). However, a "'generalized grievance' shared in substantially equal measure by all or a large class of citizens . . . alone normally does not warrant exercise of jurisdiction." (Citations omitted.) Warth v. Seldin, 422 U. S. 490, 499 (II) (95 SCt 2197, 45

LE2d 343) (1975). See also Frances Wood Wilson Foundation, 223 Ga. at 589 ("If he is not within the class of those persons whose rights are adversely affected by the statute, or if he has suffered no harm or stands to suffer no harm by the mere presence of the statute upon the books, he has no standing to attack its validity."). Because OCGA § 17-6-90 (a) does not regulate Appellants' conduct and, in the absence of current peace bonding proceedings — or even an allegation that a judicial officer in Hall County would exercise such discretion — Appellants cannot show anything more than a hypothetical concern regarding OCGA § 17-6-90 (a), and they lack standing to challenge it.

Because Appellants lacked standing to bring their declaratory judgment action, the trial court lacked jurisdiction over this matter and consequently erred in entering an order addressing the claims on the merits. Accordingly, we vacate the judgment of the trial court and remand this matter with direction that the court dismiss the complaint for relief.

Judgment vacated and case remanded with direction. Hines, C. J, Benham, J., and Judge N. Jackson Harris concur. Nahmias, Blackwell, and Boggs, JJ., concur in judgment only. Melton, P. J., and Peterson, J., dissent. Grant, J., not participating.

PETERSON, Justice, dissenting.

A robust standing doctrine is necessary to ensure that courts remain the least dangerous branch of government. When we decide only cases brought by parties seeking redress for actual harm, we limit ourselves to exercising only that power granted us by the Georgia Constitution. See Ga. Const. Art. VI, Sec. VI, Paras. II, III, V (granting us jurisdiction over certain "cases"); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-561 (II) (112 SCt 2130, 119 LE2d 351) (1992) (explaining that a constitutional grant of jurisdiction over "cases" and "controversies" limits courts' power to decide only cases that satisfy three-part standing requirement); Fulton Cty. v. City of Atlanta, 299 Ga. 676, 677 (791 SE2d 821) (2016) (citations omitted) ("It is a settled principle of Georgia law that the jurisdiction of the courts is confined to justiciable controversies."); Blackmon v. Tenet Healthsystem Spalding, Inc., 284 Ga. 369, 371 (667 SE2d 348) (2008) (citations omitted) (noting standing is constitutional and that "a plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction"); Cheeks v. Miller, 262 Ga. 687, 688 (425 SE2d 278) (1993)

9

(citation omitted) ("The existence of an actual controversy is fundamental to a decision on the merits by this court."). When we venture beyond that limit, we risk wading into waters deeper than our constitutional authority. And so I deeply respect the majority's scruples in not exceeding that authority.

But just as we must *not* decide cases not properly before us, we *must* decide cases that *are* properly before us. And here, the Parkers' case is properly before us. The statute they challenge as unconstitutional has been enforced against them three times already, and the Parkers have shown that they face a credible threat that it will be enforced against them in the future. Under well-established precedent, that means they have standing to bring at least some of their claims. I respectfully dissent.

Standing requires a showing that (1) the plaintiff has personally suffered some actual or threatened injury (an "injury in fact"); (2) the injury can fairly be traced to the challenged wrong; and (3) a favorable decision is likely to redress the injury. See Lujan, 504 U.S. at 560-561 (II); see also Granite State Outdoor Advert., Inc. v. City of Roswell, 283 Ga. 417, 419-420 (1) (658 SE2d 587) (2008) (citing Lujan and other federal cases evaluating standing requirement and noting that they are consistent with Georgia jurisprudence requiring a showing that the alleged constitutional infirmity is "hurtful to the attacker"); Catoosa Cty.

v. R.N. Talley Properties, LLC, 282 Ga. 373, 375 (651 SE2d 7) (2007) ("[A] party lacks standing unless he can show that the allegedly unconstitutional feature of the statute has infringed his rights.") (citation and punctuation omitted); Atlanta Taxicab Co. Owners Ass'n v. City of Atlanta, 281 Ga. 342, 354 (1) (638 SE2d 307) (2006) (Benham, J., dissenting in part) (noting that Georgia's key standing requirement that a plaintiff show that the challenged statute injured or adversely impacted his rights was clarified by Lujan). We have recognized that a litigant has standing to challenge a statute, "even on First Amendment grounds and even when seeking only a declaratory judgment, 'only if the law has an adverse impact on that litigant's own rights,' which means that the litigant must establish a threat of 'injury in fact' that is 'actual and imminent, not conjectural or hypothetical.'" Sentinel Offender Svcs., LLC v. Glover, 296 Ga. 315, 323 (1) n.16 (766 SE2d 456) (2014) (citing Manlove v. Unified Govt. of Athens-Clarke Cty., 285 Ga. 637 (680 SE2d 405) (2009)). The requirement that a plaintiff have standing applies to "each claim he seeks to press[.]" DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (126 SCt 1854, 164 LE2d 589) (2006); see also Center for a Sustainable Coast, Inc. v. Turner, 324 Ga. App. 762, 765 (751 SE2d 555) (2013).

2

1. *Subsection (a) regulates conduct, and so may properly be the subject of a vagueness and overbreadth challenge.*

I begin by analyzing the statute on a point the majority finds dispositive. The majority concludes that the statute is merely procedural and does not regulate conduct, and thus there is no regulation of conduct or speech that could be vague or overbroad. But the statute challenged here invokes the power of the State to order a person to pay money or sequester their assets based upon a judicial finding that the person engaged in certain conduct, and so is properly understood as regulating that conduct.

OCGA § 17-6-90 (a) provides:

> Any judicial officer authorized to hold a court of inquiry may, upon the application of others under oath or upon his or her own motion, issue a notice to appear for a show cause hearing to any person whose conduct in the county is sufficient to justify the belief that the safety of any one or more persons in the county or the peace or property of the same is in danger of being injured or disturbed thereby. Such show cause hearing shall be held within seven days of such application or motion. Upon sufficient cause being shown, the court may require from the person a bond with sureties for such person's good behavior with reasonable conditions to ensure the safety of persons or property in the county or the preservation of the peace of the county for a period of up to six months.

Although subsection (a) does impose requirements for a show cause hearing, it also confers substantive authority upon a judicial officer to impose a bond upon

3

the finding of certain past behavior. The first sentence of subsection (a) authorizes a judicial officer to hold a show cause hearing when a person's "conduct in the county is sufficient to justify the belief that the safety of any one or more persons in the county or the peace or property of the same is in danger of being injured or disturbed thereby." And the third sentence goes on to provide that, "[u]pon sufficient cause being shown" at the show cause hearing, the judicial officer may impose a bond. In the context of the statute, the "sufficient cause" must necessarily arise from the person's "conduct in the county" that was sufficient to trigger the hearing. That conduct, then, is what authorizes the imposition of a bond.

And the imposition of a bond itself — not merely its surrender or other consequences upon the violation of its conditions — is a sanction of sorts. If the bond is a money bond, as the statute contemplates, it requires either payment to a bondsman or the sequestration of a person's assets; if a non-monetary bond, as appears to have been imposed in this case,[3] it prohibits the subject of the bond

---

[3] The purported bonds previously imposed were framed more like bilateral injunctions than money bonds with conditions of behavior. It is far from clear that the statute authorizes such orders; read in context, it appears that the bonds contemplated by the statute are financial. See OCGA §§ 17-6-90 (b) ("All bonds posted under this Code section shall be returnable in the court which required

4

from acting in ways that otherwise would have been perfectly legal, and exposes them to exponentially greater risk.[4] Accordingly, subsection (a) is properly understood as regulating the conduct that authorizes a judicial officer to impose such a bond.

The majority's contrary conclusion also creates a serious problem with the statute. By reading subsection (a) as merely creating a process for a judge to

the bond . . . ."); 17-6-91 ("The sureties on the bond shall have the privilege of surrendering their principal as in other cases of bail."). This is consistent with Blackstone's description of peace and good behavior bonds at common law. See 4 William Blackstone, Commentaries on the Laws of England: Of Public Wrongs 252-253 (6th ed., 1825) (the security to ensure a party's future conduct "consists in being bound, with one or more sureties, in a recognizance or obligation to the king, entered on record, and taken in some court or by some judicial officer; whereby the parties acknowledge themselves to be indebted to the crown in the *sum required*," to be discharged "if the party shall appear in court on such a day, and in the mean time shall keep the peace; either generally, towards the king and all his liege people; or particularly also, with regard to the person, who craves the security. Or, if it be for the good behavior, then on condition that he shall demean and behave himself well, (or be of good behavior), either generally or specifically, for the time therein limited[.]") (emphasis added). But the Parkers do not bring an as-applied challenge to the statute, nor do they argue that the nature of the bonds previously imposed against them violated the terms of the statute.

[4] If the Parkers had violated the terms of the most recent bond related to their surveillance cameras, they may well have been guilty of aggravated stalking, a felony that carries a potential prison sentence of 10 years. See OCGA § 16-5-91 (a) (defining aggravated stalking to include surveillance for the purpose of harassment in violation of a good behavior bond).

impose a bond, the majority necessarily reads the statute as imposing no standard whatsoever that governs the judge's discretion in requiring a bond from someone who has not been adjudicated to have committed any wrong. This will not do; the arbitrary and discriminatory enforcement such a statute would invite would indeed pose serious due process concerns.

2. *The Parkers have standing to assert a vagueness challenge to OCGA § 17-6-90 (a).*

Appellants assert that the statute does not inform them what conduct, including the use of security cameras, might subject them to another good behavior bond. Evidence of "future injury may suffice [to constitute an 'injury in fact'] if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." Susan B. Anthony List v. Driehaus, ___ U.S. ____ (134 SCt 2334, 2341, 189 LE2d 246) (2014) (citation and punctuation omitted). See also Frances Wood Wilson Found., Inc. v. Bell, 223 Ga. 588, 589-590 (1) (157 SE2d 287) (1967) ("[U]ntil plaintiff can show either that the statute in question has been invoked against it, or that there is a direct threat by the authorities to invoke it, it has no standing to come into court and have the court declare the statute invalid."). When no injury is threatened or

6

impending, a future injury is speculative and insufficient to constitute an injury in fact. See DaimlerChrysler, 547 U. S. at 345; Manlove, 285 Ga. at 638. A mere showing of past injury is insufficient without a substantial basis also to find a credible threat of future injury. See City of Los Angeles v. Lyons, 461 U. S. 95, 102-103 (103 SCt 1660, 75 LE2d 675) (1983).

The Parkers have shown an injury in fact regarding the purported lack of notice as to what conduct OCGA § 17-6-90 (a) regulates. The evidence is undisputed that the Parkers and the Leeuwenburgs have been engaged in a long-standing conflict with each other as next door neighbors, and the Leeuwenburgs have on occasion sought to address their disputes by seeking a good behavior bond against the Parkers. Although the last behavior bond was dismissed without prejudice after the Parkers challenged it, the Leeuwenburgs expressly told the Parkers in an e-mail between counsel that the Leeuwenburgs "will be filing in Superior Court if the harassing conduct resumes. . . ." Among the conduct that the Leeuwenburgs found harassing was the Parkers' use of security cameras that captured part of the Leeuwenburgs' property. The Parkers wish to use those security cameras but reasonably fear that, if they do, the Leeuwenburgs would seek another bond and that a judge would impose such a

bond.[5]

The threat of future injury in this case is substantial and strikingly different from the alleged injury in <u>Manlove</u>, which the Leeuwenburgs argue is controlling. In <u>Manlove</u>, the plaintiffs were college students who brought a declaratory judgment action challenging a noise ordinance on First Amendment grounds. 285 Ga. at 637. We concluded that the plaintiffs lacked standing to assert their claim because they had never been subject to penalty or otherwise harmed as a result of violating the noise ordinance, and the actions they sought to take in the future did not necessarily violate the ordinance and did not support the finding of an imminent threat of enforcement. Id. at 638. Here, of course, the

---

[5] The majority argues at length that no harm can come to the Parkers under the statute without a judge exercising his or her discretion and that the Parkers alleged merely that the Leeuwenburgs would seek a bond, not that a judge would impose one if sought. But in an affidavit attached to their motion for summary judgment, Rochel Parker stated:

> We now have no idea whether we can use our security cameras, and certainly cannot do so without fear that the Leeuwenburgs will file yet another good behavior bond against us. Since the bond has been granted on the basis of the location of our cameras in the past, I have no idea how to avoid the risk of arrest or posting a bond while also keeping my home safe.

At summary judgment, this evidence — combined with the history of such bonds being issued – is sufficient to create a genuine issue of material fact on this point, which precludes dismissal for lack of standing at this stage of the case. Cf. <u>Lujan</u>, 504 U.S. at 561 (at summary judgment, a plaintiff must establish standing by pointing to evidence in the record and can no longer rest on mere allegations).

Parkers have been subjected to the statute's provisions multiple times in the past, and the Leeuwenburgs have threatened to invoke the statute again in the future if the Parkers act as they wish.

The primary authority we relied upon in <u>Manlove</u> (and upon which the majority relies here) also does not apply. In <u>Elend v. Basham</u>, 471 F3d 1199 (11th Cir. 2006), the Eleventh Circuit considered a suit against the United States Secret Service that sought declaratory and injunctive relief regarding the use of "protest zones" at presidential events that limited the areas protestors could congregate. The Eleventh Circuit affirmed the suit's dismissal and held that, although the plaintiffs had once been arrested for protesting in the past, the possibility of future harm was too speculative to establish standing because the plaintiffs did not assert that they had protested since their arrest or that they had concrete plans to protest in the future. Id. at 1208-1209 (II) (A). Here, as explained above, the evidence regarding future injury is considerably stronger.

In arriving at its conclusion, the Eleventh Circuit acknowledged that a past injury may establish "a sufficient imminence of future harm" when the "future injury would likely occur in substantially the same manner as the previous injury." Id. at 1208 (II) (A) (citing cases). That a "credible threat of future

9

injury" supports the finding of an "injury in fact" is not novel. In the declaratory judgment context, we have stated that a court is without power to grant such relief "[a]bsent an actual controversy involving palpable insecurity." Fourth Street Baptist Church of Columbus v. Bd. of Registrars, 253 Ga. 368, 369 (1) (320 SE2d 543) (1984) (plaintiffs not permitted to bring declaratory judgment action to challenge Board of Registrars acts and policies governing voter registration sites where they were unregistered voters who faced no uncertainty or insecurity with respect to their voting rights and faced no risk of injury from a future action taken under the  challenged statute); see also GeorgiaCarry.org, Inc. v. Atlanta Botanical Garden, Inc., 299 Ga. 26, 30-31 (1) (785 SE2d 874) (2016) (holding that declaratory judgment action was permissible to test validity and enforceability of a criminal statute where threat to enforce the criminal statute was real and not premised on mere speculation). Given the Leeuwenburgs' past practice of seeking good behavior bonds against the Parkers (and success in having them granted), including for the Parkers' use of security cameras, combined with the Leeuwenburgs' threat to continue this practice, there is a credible threat that subsection (a) will be applied against the Parkers in the near future if they act as they wish. Thus, the Parkers have an injury in

fact with respect to subsection (a) of the statute.

Although not explicitly disputed by the Leeuwenburgs or the majority, the Parkers have also satisfied the other standing elements to challenge subsection (a) on vagueness grounds. They have shown that the injury of being subjected to a bond is fairly traceable to the alleged unconstitutional features of OCGA § 17-6-90 (a). See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (II) (102 SCt 752) (70 LE2d 700) (1982); see also Catoosa Cty., 282 Ga. at 375. Additionally, obtaining a declaration that OCGA § 17-6-90 (a) is unconstitutional would redress their injury. The Parkers therefore have standing to assert their claim that OCGA § 17-6-90 (a) is unconstitutionally vague on the ground that it does not provide a fair warning of what conduct it regulates.

3. *The Parkers have standing to challenge OCGA § 17-6-90 (a) on overbreadth grounds.*

"The overbreadth doctrine permits the assertion of third-party rights in free speech cases when a statute is applied constitutionally to the party before the court, but may be unconstitutional if applied to any third parties not before the court." Granite State, 283 Ga. at 419 (1) (citation and footnote omitted).

Although a plaintiff may assert third-party rights in an overbreadth challenge, the plaintiff still must show he or she suffered an injury in fact from the challenged statute.  See id. The Parkers have made that showing here.

In CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F3d 1257, 1271 (III) (A) (1) (11th Cir. 2006), the Eleventh Circuit explained that "[a] plaintiff who has established constitutional injury under *a provision* of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision." (emphasis supplied). For this reason, "[t]he overbreadth doctrine allows plaintiffs to bring a facial challenge to *the provisions* under which the plaintiff suffered an injury in fact." Id. (citations omitted; emphasis supplied); see also KH Outdoor, LLC v. City of Trussville, 458 F3d 1261, 1267 (II) (11th Cir. 2006) (applying CAMP and holding that a plaintiff may bring an overbreadth claim to challenge only those statutory provisions that caused her injury, "regardless of whether the provision's regulation of her conduct in particular was constitutional").  But a plaintiff may not attack any statutory provision for which he or she has not established an injury in fact. CAMP, 451 F3d at 1273-1274 (III) (A) (1). See also Get Outdoors II, LLC v. City of San

Diego, 506 F3d 886, 892 (II) (B) (9th Cir. 2007); Prime Media, Inc. v. City of Brentwood, 485 F3d 343, 350 (III) (6th Cir. 2007).

As explained above, the Parkers have suffered an injury in fact with respect to OCGA § 17-6-90 (a). Therefore, they have standing to assert an overbreadth claim as to this subsection.

For all these reasons, I respectfully dissent.[6]

I am authorized to state that Presiding Justice Melton joins in this dissent.

Decided March 6, 2017 – Reconsideration denied March 30, 2017.

OCGA § 17-6-90; constitutional question. Hall Superior Court. Before Judge Fuller.

Jeffrey R. Filipovits, Drago Cepar, Jr., for appellants.

Hulsey, Oliver & Mahar, Vanessa E. Sykes, for appellees.

---

[6] I agree with the majority that the Parkers lack standing to challenge OCGA § 17-6-90 (d). They have never been arrested nor threatened with arrest under that provision.

13