303 Ga. 468
FINAL COPY


S17G1256. NEW CINGULAR WIRELESS PCS, LLC et al. v. GEORGIA DEPARTMENT OF REVENUE et al.


MELTON, Presiding Justice.

This case revolves around a decision by the Georgia Department of Revenue to deny a request for a tax refund[1] filed by New Cingular Wireless PCS, LLC; Chattanooga MSA LP; Georgia RSA No. 3, LP; and Northeastern Georgia RSA Limited Partnership (collectively "AT&T").[2] In New Cingular Wireless PCS v. Ga. Dept. of Revenue, 340 Ga. App. 316 (797 SE2d 190) (2017), the Court of Appeals affirmed the trial court's dismissal of a suit brought by AT&T to challenge the Department of Revenue's denial of the refund request. Thereafter, we granted certiorari and posed the following question: Whether Ga. Comp. R. & Regs. r. 560-12-1-.25 (2) properly requires that a dealer seeking a sales tax refund must reimburse its customer before

---

[1] The Department took approximately five years to deny the request for a refund in the amount of almost $6 million. In the original correspondence denying the refund, the Department offered no reason for doing so.

[2] The listed companies are subsidiaries of AT&T Mobility.

applying for a refund from the Department of Revenue.?  For the reasons set forth below, we find that the answer to this question is "no," and we find that the Court of Appeals opinion must be vacated in part and reversed in part, and that the case must be remanded with direction.

As set forth in the Court of Appeals opinion, the facts of this case are as follows:

> New Cingular Wireless PCS, LLC; Chattanooga MSA LP; Georgia RSA No. 3, LP; and Northeastern Georgia RSA Limited Partnership ("appellants") filed suit against the Georgia Department of Revenue and Lynnette T. Riley in her official capacity as commissioner (the "Department") following the Department's refusal to issue a refund of what the appellants contend were erroneously paid taxes [under OCGA § 48-8-2 (39) (F)]. The Department moved to dismiss the appellants' action, and [the trial court granted] that motion. . . .
>
> The appellants allege that from [November 1,] 2005 until [September 7,] 2010, they sold wireless Internet access services to Georgia customers, which were exempt from state sales tax under OCGA § 48-8-2. In November 2010, the appellants filed refund claims with the Department for sales tax that they claimed was, until September 2010, erroneously charged to Georgia customers on the purchase of wireless Internet  access service. The Department officially refused to pay the requested refund claims on March 19, 2015. Accordingly, on April 17, 2015, the appellants filed their complaint to challenge this denial.
>
> The Department answered and moved to dismiss for a lack of subject-matter jurisdiction and the failure to state a claim upon which relief could be granted. Thereafter, the Department amended its answer and attached as an exhibit a copy of a global settlement

2

agreement entered into between the appellants and their customers. The Department argued that the complaint should be dismissed because (1) the appellants did not reimburse the alleged illegally collected sales tax to customers before seeking a refund from the Department, in violation of Department Regulation 560-12-1-.25; (2) the appellants lacked standing to file sales-tax-refund claims on behalf of customers for periods prior to May 5, 2009; and (3) the action was barred by Georgia class-action law. Following a hearing on the motion to dismiss, the trial court granted it on all three grounds. [The Court of Appeals] then granted the appellants' application to file a discretionary appeal.

(Citation omitted.) New Cingular Wireless PCS, supra, 340 Ga. App. at 316.

In its ensuing decision, the Court of Appeals held:

The trial court's order contemplates the question of dismissal under both sovereign immunity/subject-matter jurisdiction and the failure to state a claim upon which relief can be granted, but it appears to ultimately conclude that dismissal is proper on the grounds of sovereign immunity. Nevertheless, we may affirm the grant of a motion to dismiss if it is right for any reason. And setting aside the question of whether appellants' action is also barred on the grounds of sovereign immunity, it is undoubtedly barred by a failure to state a claim upon which relief can be granted because (1) "the allegations of the complaint disclose with certainty that the [appellants] would not be entitled to relief under any state of provable facts asserted in support thereof" and (2) the Department has established that the appellants "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought."

(Citations omitted.) New Cingular Wireless PCS, supra, 340 Ga. App. at 317

(1). We now review the reasoning of this opinion.

3

1. As an initial matter, the Court of Appeals erred by failing to consider the issue of standing. The Department contended below that AT&T lacked standing to seek a refund on behalf of its customers prior to May 5, 2009, when an amendment to OCGA § 48-2-35.1 expressly allowing dealers to do so became effective. This should have been addressed by the Court of Appeals prior to considering the merits, as the question of standing is a jurisdictional issue. See Parker v. Leeuwenburg, 300 Ga. 789 (797 SE2d 908) (2017). For this reason, we must vacate that portion of the Court of Appeals opinion as it relates to the period from November 1, 2005 until May 5, 2009, and remand the case to the Court of Appeals for consideration of this threshold issue.[3]

_____

[3] We also note that the Court of Appeals opinion should not be read for the proposition that the issue of sovereign immunity may be pretermitted in order to consider the merits. We very recently reiterated that

> [t]he applicability of sovereign immunity to claims brought against the State is a jurisdictional issue. Indeed "[s]overeign immunity . . . like various other rules of jurisdiction and justiciability . . . is concerned with the extent to which a case properly may come before a court at all." Lathrop v. Deal, 301 Ga. 408, 432 (III) (B) (801 SE2d 867) (2017). Therefore, the applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred.

(Footnotes omitted.) McConnell v. Ga. Dept. of Labor, 302 Ga. 18-19 (805 SE2d 79) (2017). Here, however, there is agreement that OCGA § 48-2-35 does

4

2. We next consider the period of time beginning by May 5, 2009 and ending on September 7, 2010. By that point in time, OCGA § 48-2-35 mandated that taxpayers be refunded taxes or fees that were erroneously or illegally collected, and OCGA § 48-2-35.1 (d) explicitly allowed dealers[4] like AT&T to seek such a refund on behalf of its customers. In this case, it is undisputed that AT&T qualifies as such a dealer. The main disagreement revolves around the timing of a dealer's payment of improperly collected tax to its customers in relation to the procedure for seeking a refund from the Department.

We must begin our analysis with the wording of the statute and regulation at issue in this case. First, OCGA § 48-2-35 (a) generally provides that a "taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from such taxpayer under the laws of this state, whether paid voluntarily or involuntarily . . . and shall be refunded interest . . . from the date of the payment of the tax." OCGA

waive the State's sovereign immunity to allow tax refunds. See <u>Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue</u>, 279 Ga. 22 (2) (608 SE2d 611) (2005). The only question is the extent of that waiver.

[4] For a detailed definition of the term "dealer," see OCGA § 48-8-2 (8).

§ 48-2-35.1 (d) allows dealers like AT&T to seek this refund on behalf of its customers. With regard to dealer requested refunds, Ga. Comp. R. & Regs. r. 560-12-1-.25 (2)[5] further provides:

> In the case of taxes illegally or erroneously collected, the dealer may secure a refund as provided in OCGA Section 48-2-35, provided, however, the dealer must affirmatively show that the tax so illegally or erroneously collected was paid by him and not paid by the consumer, or *that such tax was collected from the consumer as tax and has since been refunded to the consumer*.

(Emphasis supplied.) Both the trial court and the Court of Appeals found that this regulation would require a dealer to refund to its customers all taxes that it contends were erroneously collected *prior to pursuing* a refund action. This construction of the regulation and the statute, which is proposed and espoused by the Department of Revenue, is unreasonable.

Neither OCGA § 48-2-35 nor OCGA § 48-2-35.1 requires a dealer to prepay potentially refundable taxes to consumers prior to seeking approval for a refund from the Department of Revenue. But the Department of Revenue

---

[5] OCGA § 48-2-12 (a) provides: "The commissioner shall have the power to make and publish in print or electronically *reasonable* rules and regulations not inconsistent with this title or other laws or with the Constitution of this state or of the United States for the enforcement of this title and the collection of revenues under this title." (Emphasis supplied.)

claims that Ga. Comp. R. & Regs. r. 560-12-1-.25 (2) does set forth such a prepayment requirement. As is relevant here, the regulation states that a dealer may "secure a refund" after showing "that such tax was collected from the consumer as tax and has since been refunded to the consumer."[6] The Department proposes that "secure a refund" in this context means that the dealer must first prepay any potential refund to the taxpayers before that dealer may even request a refund from the Department. In short, the Department argues that the phrase "secure a refund" should actually be read to mean "apply for a refund." This construction makes no sense for multiple reasons.

First, the plain language of the regulation runs counter to the Department's interpretation. To construe the regulation, we employ the fundamental rules also used in statutory construction. See Ga. Dept. of Community Health v. Northside Hosp., 295 Ga. 446, 450 (761 SE2d 74) (2014). Pursuant to these rules, we must

> construe the [regulation] according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. We must also seek to effectuate the intent of the Georgia legislature. In this regard, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative

---

[6] In this case, it is undisputed that the consumers paid the tax in question.

7

intent from the statute as a whole.

(Citations and punctuation omitted.) Lyman v. Cellchem Intl., Inc., 300 Ga. 475, 477 (796 SE2d 255) (2017). Given its ordinary meaning and considering the context of the entire regulation, the phrase "secure a refund" means "acquire a repayment."[7] So, the regulation requires a dealer to pay any refund amount to its customers prior to the point that the dealer, itself, may acquire repayment of those funds from the Department.[8] It does not require a dealer to repay funds to its customers prior to filing a *request* for a refund or prior to the Department's *determination* of whether or not any refund is due. The prepayment requirement for *filing* a refund claim is simply an extraneous prerequisite that the Department has superimposed on the statute and its own regulation.

Second, to the extent that there is any ambiguity in the statute and its corresponding regulation regarding the time for the repayment of taxes to

---

[7] See Webster's New Twentieth Century Dictionary (2d ed. 1983); American Heritage Dictionary (3d ed. 1992).

[8] This interpretation is supported by the language of OCGA § 48-2-35, which recognizes that a refund follows a determination by the Department as to what amount of repayment is due. The Department's interpretation overlooks this distinct difference, as it construes the term "secure a refund" to also mean "secure a determination." But "refund" and "determination" are not identical terms.

8

taxpayers by a dealer, the construction offered by the Department in this case would upend this orderly and logical refund process[9] and is, in fact, unreasonable.

> When . . . a genuine ambiguity appears [in statutory text], it usually is for the courts to resolve the ambiguity by ascertaining the most natural and reasonable understanding of the text. See State v. Mulkey, 252 Ga. 201, 202-204 (2) (312 SE2d 601) (1984). But when it appears that the General Assembly has committed the resolution of such an ambiguity to the discretion and expertise of an agency of the Executive Branch that is charged with the administration of the statute, the usual rule may not apply. In those instances, the courts must defer to the way in which the agency has resolved the ambiguity in question, so long as the agency has resolved the ambiguity in the proper exercise of its lawful discretion, and so long as the agency has resolved it upon terms that are reasonable in light of the statutory text. See Cook v. Glover, 295 Ga. 495, 500 (761 SE2d 267) (2014).

(Emphasis omitted.) Tibbles v. Teachers Retirement System of Ga., 297 Ga. 557, 558-559 (1) (775 SE2d 527) (2015).

A simple hypothetical highlights the unfairness of the Department's interpretation. Assume Dealer X collected $100 million in sales tax from customers and paid this amount to the Department erroneously. Later, Dealer X

---

[9] This process is set forth in OCGA § 48-2-35 (c). It generally instructs the taxpayer to file a claim form that triggers a determination as to whether any refund is owed.

wished to seek a refund of these erroneously paid taxes. Dealer X would be required to refund $100 million to its customers just to initiate the process of seeking a refund from the Department. This would have to be done long before Dealer X knew whether the Department would approve any refund *at all* — an answer that the Department might not give for years. In other words, Dealer X would have to prepay $100 million to its customers to potentially be told by the Department that no refund was due at all. If the actual amount of the refund turned out to be less than $100 million, the Department would offer no real solution that would make Dealer X whole. This is illogical, and creates a strong disincentive for dealers to seek refunds on behalf of customers. That result, in turn, undercuts the clear intent of OCGA § 48-2-35 to ensure that overpaid or illegally collected taxes are returned to taxpayers.

Third, the Department attempts to support its interpretation with language from an extraneous settlement agreement between AT&T and its customers. The record shows that, in December 2009, customers of AT&T filed class action lawsuits in federal court, which were later consolidated, seeking the return of the alleged overpaid taxes currently at issue in the present matter. In the settlement agreement, AT&T agreed to seek a refund on behalf of its customers so that the

10

overpaid funds could be returned to them. Contrary to the arguments of the Department, this settlement agreement is merely background information to the current action, and, in any event, the settlement agreement between AT&T and its customers has no bearing on the proper legal interpretation of the statutes and regulations at play here. Parties to a lawsuit have no power to fix the meanings of legislative or regulatory enactments by their agreements.

For all of the reasons set forth above, with regard to the period beginning by May 5, 2009 and ending on September 7, 2010, the Court of Appeals erred by affirming the dismissal of AT&T's case on the basis that AT&T was required to prepay any claimed refund amount to its customers prior to receiving a determination from the Department as to whether any refund will be approved. With regard to the period prior to May 5, 2009, the Court of Appeals opinion stands vacated for failure to first consider the issue of standing. Finally, with regard to all time periods for which AT&T may have standing, this opinion now requires the Court of Appeals to consider the trial court's alternative finding that AT&T's refund action was barred by Georgia's class action law.

Judgment reversed in part and vacated in part, and case remanded with direction. Hines, C. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, JJ.,

11

Judge D. Jay Stewart, and Judge James G. Tunison concur. Peterson, J., not participating. Grant, J., disqualified.

Decided April 16, 2018.

Certiorari to the Court of Appeals of Georgia — 340 Ga. App. 316.

Bryan A. Vroon; Margaret C. Wilson, for appellants.

Christopher M. Carr, Attorney General, W. Wright Banks, Jr., Deputy Attorney General, Alex F. Sponseller, Nancy M. Gallagher, Senior Assistant Attorneys General, for appellees.